IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| IGUANA, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action File No. 7:08-CV-00009-HL |
| ) | |
| PAUL E. LANHAM, an individual, ) | |
| CHARLES W. CALKINS, an individual, ) | |
| KILPATRICK STOCKTON LLP, a limited ) | |
| liability partnership, H. DAVID COBB, an ) | |
| individual, FEDERAL MARKETING ) | |
| SERVICE CORPORATION, an Alabama ) | |
| corporation and MONTGOMERY ) | |
| MARKETING, INC., an Alabama ) | |
| corporation, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS COUNTS II, III AND IV AS TO DEFENDANTS
LANHAM, CALKINS AND KILPATRICK STOCKTON LLP**

Defendants Paul E. Lanham ("Lanham"), Charles W. Calkins ("Calkins") and Kilpatrick Stockton LLP ("KS") (collectively, the "Lanham Defendants") submit this memorandum of law in support of their motion to dismiss Counts II, III and IV of the First Amended Verified Complaint (the "Amended Complaint").

**Introduction**

In its Amended Complaint, Iguana, LLC ("Iguana") asserts four claims against the Lanham Defendants and H. David Cobb, Federal Marketing Service Corporation and Montgomery Marketing, Inc. Count I seeks a declaration that Iguana's bednet product does not infringe a patent for which Lanham is the exclusive licensee. The Lanham Defendants agree that Count I is a proper claim, and are not asking the Court to dismiss it.

Count II of the Amended Complaint seeks a declaration that the Lanham Defendants are collaterally or equitably estopped from asserting that Iguana's bednet infringes Lanham's patent based on a fifteen-year-old case involving predecessor patents.  But the previous case cannot be the basis for an estoppel because it was settled and not decided on the merits.  Further, Iguana has not pled and cannot establish the elements of collateral estoppel or equitable estoppel, which is not an independent claim in any event.

Counts III and IV seek money damages and injunctive relief for tortious interference and conspiracy, respectively.  However, the Amended Complaint does not allege all of the required elements of a tortious interference claim or a conspiracy claim.  Moreover, both of these purported counts are based on Iguana's erroneous assertion that Lanham and his attorneys somehow have acted improperly by even asserting that Iguana's product infringes Lanham's patent.  Accordingly, as explained below, each of Counts II, III and IV fails to state a claim against any of the Lanham Defendants, and all three claims should be dismissed.

**Factual Background**

This case involves "bednet" products that certain of the parties have manufactured and sold to the U.S. government and to customers other than the government.  See Amended Complaint ¶¶ 15-24.  The bednets in issue are self-erecting or "pop-up" tents.  Id. ¶ 17, 20-21.

Lanham is a licensee of US Reissue Patent No. 35,571 ("US Re '571") entitled "Self-Erecting Structure" that names Eddie S. McLeese as inventor.  See id. ¶¶ 15, 24.

Iguana alleges in the Amended Complaint that it manufactures and sells bednets that "ha[ve] a single pole [and do] not come within the scope of the McLeese Multi-Pole Patent." Id. ¶ 22.

In March 2006, after becoming aware that the U.S. Defense Logistics Agency (the "DLA") was purchasing "BEDNET, POP-UP" self-erecting structures from Iguana, Lanham, through Calkins, his attorney at KS, filed an Administrative Claim with the DLA for patent infringement (the "Administrative Claim"). See id. ¶ 23. Iguana states in the Amended Complaint that "[o]n information and belief, the Lanham DLA Infringement Claim filed asserted that defendant Lanham owned the McLeese Multi-Pole Reissue Patent (Exhibit 2), and that the bednets being supplied to the DLA by Iguana infringed the McLeese Multi-Pole Reissue Patent." Id. ¶ 24.

On April 11, 2006, Calkins received an e-mail from Sanford Asman, who stated that he was an attorney for Iguana, concerning the Administrative Claim. Id. ¶ 34. Neither Calkins nor KS had any contact with Mr. Asman between May 2006 and December 2007. See id. ¶ 36 and Exhibit 6.

In December 2007, at Lanham's instruction, Calkins sent Iguana a cease and desist letter ("December 2007 Letter") addressing Iguana's offer to sell and potential sales to non-U.S. government parties. See id. ¶ 39 and Exhibit 8.

As a matter of business practice, Lanham, through his son acting on his behalf, provided his licensee, defendant Montgomery Marketing, Inc., a copy of the December 2007 Letter. See id. ¶ 78.

**Argument and Citation of Authority**

**Because Counts II, III and IV of the First Amended Verified Complaint Do Not State a Plausible Basis for Relief, Dismissal Is Warranted Under Rule 12(b)(6).**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the Court to dismiss some or all of the counts of a complaint for failure to state a claim upon which relief can be granted. To avoid dismissal, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (citations and footnote omitted). Accordingly, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. In other words, the complaint must contain enough facts to state a plausible basis for the claim.[1] See id.

Dismissal is proper under Rule 12(b)(6) if the complaint lacks an allegation regarding an element necessary to obtain relief. Pyles v. United Air Lines, 79 F.3d 1046, 1049-50 (11th Cir. 1996) (affirming dismissal of tortious interference and other claims where plaintiff failed to plead all of the elements); Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (citations omitted). Dismissal also is warranted under Rule 12(b)(6) if, assuming

---

[1] In Twombly, the Supreme Court abrogated the traditional "no set of facts in support of his claim [that] would entitle him to relief" language of Conley v. Gibson, 355 U.S. 41 (1957). Twombly, 127 S.Ct. at 1968-70 & n.8.

4

the truth of the factual allegations in the complaint, a dispositive legal issue precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

> **A. Count II Fails to State a Claim for Collateral Estoppel or Equitable Estoppel.**

In Count II of the Amended Complaint, entitled "Unenforceability Due to Collateral Estoppel and/or Equitable Estoppel," Iguana alleges that a 1992 California case estops the Lanham Defendants[2] from enforcing US Re '571 against Iguana. Iguana's argument is based on a 1992 suit filed by Edward McLeese against Richard Clark, Michael Ivanovich and their partnership for infringing US Patent 4,858,634 (the '634 patent), which is the parent of US Re '571.

The parties to the McLeese case (the "California Action") stipulated to the dismissal of all claims and counterclaims with prejudice, and the court in the California Action approved their stipulation in April 1993. No legal or factual issues were litigated in the California Action before the court approved its dismissal. See Stipulation to Dismiss Complaint and Counterclaim [and] Order of the Court Thereon in the California Action (the "Stipulation and Order"), attached as Exhibit 12 to Amended Complaint. Although Iguana refers to the Stipulation and Order as a judgment (see Amended Complaint ¶¶ 60, 64, 68), the word judgment does not appear in the Stipulation and Order. See Stipulation and Order. Although Iguana argues that the mere existence of a stipulated dismissal with prejudice in the California Action collaterally estops the Lanham Defendants from asserting US Re '571 against Iguana, its position is untenable.

---

[2] Iguana asserts Count II against Lanham, Calkins and KS. But because Calkins and KS are Lanham's attorneys and are not patent holders of US Re'571, they are not properly named as defendants in Count II.

US2000 10679948.1

### 1.  A Stipulated Order of Dismissal with Prejudice Does Not Estop Lanham from Enforcing US Re '571 Against Iguana.

When a case is dismissed with prejudice "with no stated reasons," and no issue of law or fact is actually decided, such a case "clearly does not satisfy" the requirements for collateral estoppel. Hart v. Yamaha-Parts Distribs., Inc., 787 F.2d 1468, 1474 (11th Cir. 1986).  When the parties to a patent lawsuit settle and consent to an entry of judgment dismissing the suit with prejudice, the judgment does not collaterally estop a patent holder from enforcing that patent in the future.  Kaspar Wire Works, Inc. v. Leco Eng'g and Mach., Inc., 575 F.2d 530, 532-33 (5th Cir. 1978).  Such a consent judgment "does not act as collateral estoppel, in the absence of clear evidence concerning the parties' intention, including specific reference to the issues that it was intended to preclude." Id. at 542.  Thus, for a stipulated dismissal with prejudice to act as collateral estoppel in a patent case, the order must specifically address the issues the parties seek to preclude.

In Kaspar, Leco filed a declaratory judgment action alleging that Kaspar's '608 patent was invalid.  575 F.2d at 533.  The parties settled, and consented to an entry of judgment that the suit was dismissed "with prejudice." Id.  One year later, Kaspar sued Leco for infringing the '608 patent.  Kaspar argued that Leco was estopped from arguing that the patent was invalid because the dismissal with prejudice was a final adjudication on the merits of Leco's claim of invalidity. Id. at 534.  The court held that because no issue of law or fact was adjudicated in the earlier action, the final judgment had no issue preclusive effect. Id. at 537.

As in Kaspar, the parties in the California Action signed a stipulation dismissing all claims and counterclaims with prejudice, which the judge incorporated into an order.  Also, like Kaspar, no issues of law or fact were adjudicated in the California Action, and the

stipulation and order in the California Action did not include any statements regarding the parties' intent or specifically refer to issues the parties wanted to preclude.  Therefore, like the patent holder in Kaspar, Lanham is not collaterally estopped from asserting US Re '571 against Iguana.

### 2. Iguana Has Failed to Make a Prima Facie Case for Collateral Estoppel.

In addition to the fact that a stipulated dismissal such as the one in Kaspar and in this case is not a valid basis for collateral estoppel, the Amended Complaint does not allege the required elements of collateral estoppel.  In the Eleventh Circuit, a party relying on collateral estoppel must prove that

> (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been 'a critical and necessary part' of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998).  Iguana does not allege any of the elements of collateral estoppel in Count II of its Amended Complaint.

In Count II, Iguana attempts to gloss over the fact that the California Action and this case involve different patents by characterizing US Re '571 as "merely a reissue of the ['634 patent]."  See Amended Complaint ¶ 62.  In fact, claim 15 of US Re '571, which is a claim that Lanham contends that the Iguana bednet infringes, was not a claim in the '634 patent.

Although Iguana alleges that it is "making and selling bednets in accordance with the teachings of the Ivanovich" patent (see First Amended Complaint ¶¶ 63-64), the California

7

Action alleged infringement of the '634 patent, rather than whether the defendants practiced the Ivanovich patent.

Moreover, even if Iguana were practicing the Ivanovich patent, Iguana could still infringe US Re '571. Patents can overlap. An inventor can obtain a patent for an improvement to a patent held by another, but the later inventor's patent does not immunize its holder against claims of infringement by the original patent holder. This concept is referred to in patent cases as "domination." See Tex. Instruments, Inc. v. U.S. Int'l Trade Comm'n, 805 F.2d 1558 (Fed. Cir. 1986). The Lanham Defendants submit that the concept of domination is applicable here, and that if Iguana's bednet practices the Ivanovich patent (Iguana has presented no evidence why the product is covered by Ivanovich), Iguana may nonetheless infringe US Re '571. Thus, Iguana has not alleged that the infringement issues before the Court are identical to those in the California Action.

The issue Iguana seeks to preclude in Count II—whether the Iguana bednet infringes US Re '571—was never litigated in the California Action. In fact, Iguana has not pled that any issues were litigated in the prior proceeding, and it cannot do so, because the California Action was dismissed with prejudice without any judicial determination of facts or law. Because (a) Iguana has not alleged identical issues between the California Action and this case and it cannot do so and (b) the California Action was resolved by consent rather than by a judicial determination on the merits, Iguana also cannot show that the issues determined in California Action were a critical and necessary part of the judgment. Finally, Iguana does not allege in Count II or elsewhere in the Amended Complaint that Lanham had a full and fair opportunity to litigate the issue in this case in the California Action.

### 3. Iguana Has Failed to Make a Prima Facie Case for Equitable Estoppel, Which is Not a Stand-Alone Claim.

Iguana also has not pled, and cannot in any event show, the elements of equitable estoppel. An equitable estoppel requires

> First, a false representation or concealment of facts; second, it must be within the knowledge of the party making the one or concealing the other; third, the person affected thereby must be ignorant of the truth; fourth, the person seeking to influence the conduct of the other must act intentionally for that purpose; and fifth, persons complaining shall have been induced to act by reason of such conduct of the other.

Kim v. Park, 626 S.E.2d 232, 233 (Ga. Ct. App. 2006) (citations omitted).

The only allegation about equitable estoppel in the Verified Complaint is paragraph 65: "Further, the inaction of the defendants for two years equitably estops them from now asserting infringement against Iguana." Iguana has not pled a false representation or concealment of facts, or any of the other elements of equitable estoppel.

Further, equitable estoppel is not an independent cause of action under Georgia law. Kirkland v. Pioneer Mach., Inc., 534 S.E.2d 435, 437 (Ga. Ct. App. 2000); Marshall v. King & Morgenstern, 613 S.E.2d 7, 11 (Ga. Ct. App. 2005). "Absent a proper legal claim, a plaintiff cannot recover simply by establishing the elements of equitable estoppel." Marshall, 613 S.E.2d at 11 (citing Kirkland). Even if Iguana had pled or could plead the elements of equitable estoppel, its doing so would not entitle it to recover under Georgia law, because equitable estoppel is not a stand-alone claim.

Thus, both because the dismissal of the California Action without a ruling on the merits cannot provide a basis for collateral estoppel of a patent case, and because Iguana has not pled all (or any) of the elements of collateral estoppel or equitable estoppel and cannot do

9

so, the Lanham Defendants submit that Count II should be dismissed for failure to state a claim.

### B. Count III of the Amended Complaint Fails to State a Claim Against the Lanham Defendants for Tortious Interference.

Under Georgia law, the elements of both tortious interference with contract and tortious interference with business relations are

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a party or third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

Culpepper v. Thompson, 562 S.E.2d 837, 840 (Ga. Ct. App. 2002) (granting defendant's motion for summary judgment where, among other things, there was no evidence of an improper or wrongful act and no evidence of malice); Vito v. Inman, 649 S.E.2d 753, 757 (Ga. Ct. App. 2007) (same); see also Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc., 586 S.E.2d 507, 510 (N.C. Ct. App. 2003) (defendant was entitled to summary judgment on tortious interference where there was no evidence that defendant acted improperly or without justification). Iguana's tortious interference claim, like Iguana's other tort claims, is premised on the untenable proposition that it is impossible for Lanham or his attorneys to claim in good faith that Iguana infringes US Re '571. As demonstrated here and in Section A, this premise is doubly flawed.

When the government buys and then uses a product, a patent owner's sole remedy for infringement by the product's manufacturer is an action against the United States in the Court of Federal Claims. 28 U.S.C. §1483(a). However, for non-governmental use, the

10

patent holder may pursue a claim under 35 U.S.C. §271.  Section 1483 precludes claims against manufacturers who sell for government use to free the government from having its contractors and subcontractors involved in patent litigation that could impact the products the government has purchased, <u>not</u> to exempt manufacturers from liability for sales to customers other than the government.  <u>Systron-Donner Corp. v. Palomar Scientific Corp.</u>, 239 F. Supp. 148 (N.D. Cal. 1965).

The Lanham Defendants believe that Iguana offers its bednet for sale to private parties for non-governmental use.  Iguana admits at least some non-governmental sales in the Amended Complaint.  <u>See</u> Amended Complaint ¶ 18 (admitting non-governmental use sales by stating "bednets manufactured by Iguana are sold, <u>almost</u> exclusively, to the U.S. government for military use") (emphasis added).  Lanham had a legal right to pursue the full scope of enforcement of patent rights under US Re '571 for Iguana's sales to customers other than the government, as set forth in the December 2007 Letter. [3]

A patent owner is entitled to notify customers and potential customers of its patent rights.  <u>GP Indus., Inc. v. Eran Indus., Inc.</u>, 500 F.3d 1369, 1373-75 (Fed. Cir. 2007)

---

[3] Iguana contends that Calkins and KS violated Rule 4.2 of the North Carolina Rules of Professional Conduct.  Rule 4.2(a) provides that "During the representation of a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."  To the extent that Iguana contends the December 2007 Letter is a basis for its tortious interference or conspiracy claims (<u>see</u> Amended Complaint ¶¶ 73-77, 84-85), violation of the standards governing an attorney's professional conduct cannot be the basis for a civil claim against the attorney.  <u>See</u> N.C. Rev. R. of Prof'l Conduct 0.2 (Scope) [7] (Rules are not designed to be a basis for civil liability); <u>Staton v. Brame</u>, No. 96 CVS 1409, 2001 WL 34000153, at *25 (N.C. Super. Ct. May 31, 2001) (violation of the Rules is not a basis for civil liability); <u>see also</u> Ga. R. & Regs. St. Bar R. 4-102(d) Preamble [18] (Georgia Rules are not a basis for civil liability); <u>In Re Rock Rubber & Supply of Conn., Inc.</u>, 345 B.R. 37, 41 (Bankr. D. Conn. 2006) (violation of Connecticut Rule 4.2 did not provide a basis for civil liability).

11

(reversing district court's preliminary injunction because patent owners may inform potential infringers of the existence of its patent), citing 35 U.S.C. § 287 (authorizing a patentee to "give notice to the public" of a patent); Va. Panel Corp. v. MAC Panel Co., 133 F.3d 860, 869 (Fed. Cir. 1997) ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction.") (citation omitted).

At all times, Lanham, Calkins and KS were undertaking legitimate efforts to protect Lanham's patent rights and the rights of Lanham's sublicensees who practice US Re '571. Because their conduct is legally permissible and not tortious, it cannot constitute improper conduct or wrongful action.

Iguana also does not allege in the Amended Complaint that the Lanham Defendants acted with malice or intent to injure Iguana's business relationships, which is a required element of a tortious interference claim. The Lanham Defendants submit that Iguana cannot allege malice or intent to injure because the conduct in issue was legally permissible.

Also absent from the Amended Complaint is an allegation that the conduct of any Lanham Defendant caused a third-party to (a) breach a contractual obligation to Iguana or (b) fail to do business with Iguana. Iguana alleges that the filing of the Administrative Claim caused DLA to delay payment, but never alleges that this action by DLA was inconsistent with DLA's contractual rights or that DLA ultimately failed to pay, with appropriate interest, as to any delayed payment.

Because (1) neither the December 2007 letter nor Iguana's filing of the administrative claim was improper or wrongful, (2) there is no allegation or evidence that the Lanham

Defendants acted with malice or the intent to injure Iguana and (3) no allegation or evidence that the Lanham Defendants caused a third-party to breach an existing obligation or to fail to do business with Iguana, Iguana has failed to state a plausible basis for relief and Count III should be dismissed as to the Lanham Defendants.

### C.  Count IV Should Be Dismissed Because Iguana Has Not Stated a Valid Claim for Common Law Conspiracy.

A civil conspiracy is "a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." Mustaqeem-Graydon v. SunTrust Bank, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002) (citation omitted). A plaintiff seeking damages for conspiracy must show that two or more persons, acting in concert, engaged in conduct that amounts to a tort. Id. Without an underlying tort, there is no liability for civil conspiracy. Id. ("because Graydon's underlying fraud claim fails, he cannot maintain a cause of action for conspiracy to defraud him"); see also Anderson v. Derrick, No. 1:06CV264, 2007 WL 1166041, at *9 (W.D.N.C. Apr. 12, 2007) (North Carolina law is in accord).

As explained in Section B, a patent owner is entitled to notify customers and potential customers of its patent rights. Under both Georgia and North Carolina law, one cannot conspire to do what one is legally entitled to do. Barnwell v. Barnett & Co., 476 S.E.2d 1, 3 (Ga. Ct. App. 1996) (representatives of entity that had authority to terminate contract could not conspire to tortiously interfere with the contract); Combs & Assocs., Inc. v. Kennedy, 555 S.E.2d 634, 642 (N.C. Ct. App. 2001) (defendants' agreement to replace representative months before giving representative contractually-mandated thirty- day notice of termination was a sound business practice and not an unlawful conspiracy).

US2000 10679948.1

Therefore, a "conspiracy" to effect what one has a legal right to do is not actionable. Nelson v. M&M Prods. Co., 308 S.E.2d 607, 608 (Ga. Ct. App. 1983); Privette v. Univ. of N.C., 385 S.E.2d 185, 133-135, 139 (N.C. Ct. App. 1989); see also 13 Ga. Jur. Personal Injury and Torts § 14:3 ("conspiracy" to achieve a legal objective is not actionable). Before liability may be imposed for interference with contractual relations by means of a conspiracy, there must be evidence of wrongful interference. Rose v. Zurowski, 511 S.E.2d 265, 266 (Ga. Ct. App. 1999); Pleasant Valley Promenade v. Lechmere, Inc., 464 S.E.2d 47, 54 (N.C. Ct. App. 1995). Thus, because the Lanham Defendants had a legal right to enforce the entire scope of Lanham's patent rights, there can be no conspiracy.

Further, as a general rule, an attorney is not liable to third persons for the attorney's actions or conduct arising out of the professional relationship with his or her client, particularly where the acts complained of are performed in good faith. See Flateau v. Reinhardt, Whitley & Wilmot, 469 S.E.2d 222, 226 (Ga. Ct. App. 1996) (attorney is not liable to client's opponent for bringing a suit if he acts in good faith and without knowledge of any malice on his client's part), citing Williams v. Inman, 57 S.E. 1009 (Ga. Ct. App. 1907); Petrou v. Hale, 260 S.E.2d 130, 134-35 (N.C. Ct. App. 1979) (attorney is not liable to adverse party for negligence or malpractice). Under ordinary circumstances, an attorney who does not represent a party may only be held liable to that party on the showing of fraud or collusion, or of a malicious or tortious act. Id. Thus, an attorney is not liable to a third party where he or she acts merely as an attorney in furthering the interests of his or her client, particularly where the attorney acts on the client's instructions, or in the institution or conduct of a lawsuit. Id. Here, as explained at length in Section A, there was and is a good faith basis for Lanham and his lawyers to believe that Iguana's product infringes US Re '571.

14

Further, even if Calkins' direct communication with Iguana in the December 2007 Letter violated a rule of professional responsibility, violations of such rules are not independent torts.  See supra footnote 3.

Because Iguana has not pled conduct by two or more defendants that amounts to a tort, the Lanham Defendants respectfully ask the Court to dismiss Count IV.

## Conclusion

For the foregoing reasons, the Lanham Defendants respectfully request that Count II, III and IV be dismissed for failure to state a claim against them upon which relief can be granted.

|  |  |
|---|---|
|  | s/Susan A. Cahoon |
| KILPATRICK STOCKTON LLP | Susan A. Cahoon |
| Suite 2800, 1100 Peachtree Street | Georgia Bar No. 102000 |
| Atlanta, Georgia  30309-4530 | Jill Warner |
| Telephone:  (404) 815-6500 | Georgia Bar No. 378472 |
| Fax:  (404) 815-3145 |  |
| E-mail:  scahoon@kilpatrickstockton.com | Attorneys for Defendants Paul E. Lanham, Charles Calkins and Kilpatrick Stockton LLP |

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2008, I electronically filed the foregoing **Memorandum of Law in Support of Motion to Dismiss Counts II, III and IV as to Defendants Lanham, Calkins and Kilpatrick Stockton LLP** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Sanford J. Asman, Esq.

    Hugh B. McNatt, Esq.

|  |  |
|---|---|
|  | s/Susan A. Cahoon |
| KILPATRICK STOCKTON LLP | Susan A. Cahoon |
| Suite 2800, 1100 Peachtree Street | Georgia Bar No. 102000 |
| Atlanta, Georgia 30309-4530 | Jill Warner |
| Telephone: (404) 815-6500 | Georgia Bar No. 378472 |
| Fax: (404) 815-3145 |  |
| E-mail: scahoon@kilpatrickstockton.com | Attorneys for Defendants Paul E. Lanham, Charles Calkins and Kilpatrick Stockton LLP |