**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| **IGUANA, LLC**<br><br>      **Plaintiff,**<br><br>      **vs.**<br><br>**PAUL E. LANHAM, an individual,**<br><br>**RANDALL J. LANHAM, an individual,**<br><br>**CHARLES W. CALKINS, an individual,**<br><br>**KILPATRICK STOCKTON LLP, a limited liability partnership,**<br><br>**H. DAVID COBB, an individual,**<br><br>**FEDERAL MARKETING SERVICE CORPORATION, an Alabama corporation,**<br><br>**MONTGOMERY MARKETING, INC., an Alabama corporation,**<br><br>**EDWARD ("EDDIE") S. MCLEESE, an individual, and**<br><br>**PACIFIC TRADING POST.COM, a corporation,**<br><br>      **Defendants.** | **Civil Action No.**<br><br>**07:8-CV-00009-HL**<br><br><br><br><br><br>**VERIFIED COMPLAINT**<br><br>**Patent**<br><br>**Declaratory Judgment**<br><br>**Tort** |

---

### SECOND AMENDED COMPLAINT

---

### NATURE OF THE ACTION

Plaintiff, Iguana, LLC ("Iguana"), through its undersigned attorney, complains of

defendants, Paul E. Lanham ("Lanham"), Randall J. Lanham ("Randall"), Charles W. Calkins,

Esq. ("Calkins"), Kilpatrick Stockton, LLP ("Kilpatrick Law Firm"), Federal Marketing Service

Corporation ("MMI-Federal"), Montgomery Marketing, Inc. ("MMI"), H. David Cobb ("Cobb"),

Edward ("Eddie") S. McLeese ("McLeese"), and Pacific Trading Post.com ("Pacific"), as

follows:

1.      This is an action seeking a declaratory judgment that U.S. Patent RE 35,571 ("the McLeese Multi-Pole Reissue Patent") is invalid and not infringed; that plaintiff Iguana does not infringe any valid patent of defendants McLeese, Pacific, or Lanham; that Iguana has been defamed by defendants Lanham, Randall, Calkins, the Kilpatrick Law Firm, MMI-Federal, MMI, and Cobb; that defendants Lanham, Randall, Calkins, the Kilpatrick Law Firm, MMI-Federal, MMI, and Cobb should be permanently enjoined from further interfering with plaintiff Iguana's contracts and business relations; and that defendants Lanham, Randall, Calkins, the Kilpatrick Law Firm, MMI-Federal, MMI, and Cobb should be permanently enjoined from further allegations of infringement of the McLeese Multi-Pole Reissue Patent based on Iguana's manufacture and sale of bednets using a one-pole system, as explained more fully hereinafter.

2.      This action further seeks a judgment that the McLeese Multi-Pole Reissue Patent is unenforceable as it expired due to the failure to pay a Maintenance Fee which fee was due by August 22, 2001.

3.      Alternatively, this action seeks a judgment that the McLeese Multi-Pole Reissue Patent is unenforceable due to inequitable conduct in underpaying the Maintenance Fee due by August 22, 2001, and the associated surcharge, by improperly asserting "small entity" status.

4.      Alternatively, this action seeks a judgment that the McLeese Multi-Pole Patent is unenforceable, or has expired, due to the inequitable conduct of the patentee through the acceptance of a refund of the Maintenance Fee and surcharge which were paid on August 22, 2001, and refunded by the U.S. Patent and Trademark Office ("USPTO") on September 6, 2001.

5.      Alternatively, this action seeks a judgment that the McLeese Multi-Pole Patent is invalid pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103 and/or 35 U.S.C. § 112.

6.      This action further seeks compensatory and punitive damages against defendants Lanham, Randall, Calkins, the Kilpatrick Law Firm, MMI-Federal, and MMI for defamation and tortious interference with plaintiff Iguana's contracts and business relationships and it further asserts that the defendants Lanham, Randall, Calkins, the Kilpatrick Law Firm, MMI-Federal, and MMI are jointly and severally liable for damages due to their unlawful, conspiratorial relationship.

## PARTIES

7.      Plaintiff Iguana is a limited liability company organized and existing under the laws of the State of Georgia, having its principal offices at 2474 Magnolia Road, Thomasville, Georgia 31792.

8.      On information and belief, defendant Lanham is an individual residing at 11 Stanton Lane, Ripley, West Virginia  25271.

9.      On information and belief, defendant Randall is an attorney admitted to the Bar of California, whose address is 28562 Oso Parkway, Unit D, Rancho Santa Margarita, California 92688.

10.      On information and belief, defendant Calkins is an attorney admitted to the Bars of North Carolina, Massachusetts, District of Columbia, and he is a Patent Attorney, registered to practice before the USPTO.  Mr. Calkins is a partner in defendant law firm Kilpatrick Stockton LLP ("Kilpatrick Law Firm"), located in Winston-Salem, North Carolina.

11.      On information and belief, defendant Kilpatrick Law Firm is a law firm located in Winston-Salem, North Carolina.

12.      Hereafter, the defendants Lanham, Calkins, and the Kilpatrick Law Firm are collectively referred to as "the Lanham Defendants".

13.     On information and belief, defendant MMI-Federal is an Alabama corporation having an address of PO Box 241637, Montgomery, Alabama.  MMI-Federal has been a competitor of Iguana.

14.     On information and belief, defendant MMI is an Alabama corporation having an address of 6101 Brewbaker Boulevard, Montgomery, Alabama.  MMI has been a competitor of Iguana.

15.     On information and belief, defendant Cobb is an individual whose business address is P.O. Box 241367, Montgomery, Alabama  36124-1367

16.     Hereafter, the defendants MMI, MMI-Federal, and Cobb are collectively referred to as "the MMI Defendants".

17.     On information and belief, defendant McLeese is an individual residing in California whose address is presently unknown.

18.     On information and belief, defendant Pacific is a California corporation whose address is presently unknown.  On information and belief, defendant Pacific is the successor-in-interest of a California corporation previously known as Natural Born Carvers, Inc.

## JURISDICTION AND VENUE

19.     This action arises under the federal Patent Act, 35 U.S.C. §101, *et seq*., and under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

20.     This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b), because this action arises under an Act of Congress relating to patents and because it contains a claim of tortious unfair competition joined with a substantial and related claim under the patent laws.

21.     This court has further subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

22.    Venue is properly laid in the Middle District of Georgia pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), in that defendant Lanham, through his counsel, defendants Calkins and the Kilpatrick Law Firm, and through defendant Randall, along with defendants Calkins and the Kilpatrick Law Firm, acting in conspiracy with defendant Lanham, or, alternatively, acting in gross disregard for their own professional obligations, committed the acts complained of herein within this judicial district, and they are subject to personal jurisdiction in this district.

23.    Venue is properly laid in the Middle District of Georgia pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), with respect to defendants Randall, Cobb, MMI, and MMI-Federal in that, on information and belief, they participated in the conspiratorial acts complained of herein, and their actions tortiously interfered with plaintiff's legitimate business in this judicial district.

24.    On information and belief, venue is properly laid in the Middle District of Georgia pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), in that defendants McLeese and Pacific are believed to have an interest in the McLeese Multi-Pole Reissue Patent.

## STATEMENT OF FACTS

### Relevant Patents

25.    The following U.S. Patents are relevant to the present action:

(a)    U.S. Patent No. 4,858,634 entitled **SELF-ERECTING STRUCTURE** was issued to McLeese on August 22, 1989 ("the Original McLeese Multi-Pole Patent").  A true copy of the Original McLeese Multi-Pole Patent is attached hereto as Exhibit 1.  As illustrated in the various Figures of the Original McLeese Multi-Pole Patent the invention described therein uses at least two poles to support the fabric structure of a self-erecting tent.  The Original McLeese Multi-Pole Patent was surrendered upon the issuance of U.S. Reissue No. 35,571 ("the McLeese Multi-Pole Reissue Patent").  The available records of the U.S. Patent

and Trademark Office ("the PTO") show no assignment of the Original McLeese

Multi-Pole Patent, whereby, on information and belief it was always owned by

McLeese.

(b)     U.S. Reissue No. 35,571 ("the McLeese Multi-Pole Reissue Patent") is a reissue

of the Original McLeese Multi-Pole Patent which was reissued on July 29, 1997 at

which time it replaced the Original McLeese Multi-Pole Patent.  A true copy of

the McLeese Multi-Pole Reissue Patent is attached hereto as Exhibit 2.  Like the

Original McLeese Multi-Pole Patent, the disclosure contained in the McLeese

Multi-Pole Reissue Patent, and each of its claims requires that the structure have

at least two distinct poles, as illustrated in the various Figures of the McLeese

Multi-Pole Reissue Patent.  The available records of the PTO show no assignment

of the McLeese Multi-Pole Reissue Patent, whereby, on information and belief it

was always owned by McLeese.

(c)     U.S. Patent No. 5,163,461 entitled **SELF-ERECTING SHELTER** issued on

November 17, 1992 to Michael K. Ivanovich and Richard D. Clark ("the

Ivanovich Single Pole Patent"), a true copy of which is annexed hereto as Exhibit

3.  The Ivanovich Single-Pole Patent describes a structure which includes a single,

resilient pole.  The Ivanovich Single Pole Patent lapsed due to the non-payment of

a required Maintenance Fee.  Accordingly, the invention described in the

Ivanovich Single-Pole Patent is now in the public domain.

### Iguana Bednets

26.     Plaintiff Iguana is in the business of manufacturing and supplying a product called a

"bednet".

27.     The bednets manufactured by Iguana are self-erecting ("pop up") tents, as illustrated in attached Exhibit 4.

28.     The bednets manufactured by Iguana are sold to the U.S. government and used by members of the U.S. military.

29.     During the years 2005 and 2006 Iguana had a contract to supply bednets to the U.S. government.

30.     In or about December 2005 Iguana was contacted by defendant Cobb, acting on behalf of the MMI Defendants.  In communications he made to Iguana, Cobb asserted that the MMI Defendants had an exclusive license to the Original McLeese Multi-Pole Patent.

31.     While the Original McLeese Multi-Pole Patent had already been surrendered as of the time that defendant Cobb asserted it, it is substantively virtually identical to the McLeese Multi-Pole Reissue Patent.

32.     It was explained to Cobb that the bednets manufactured and sold by Iguana had a single pole which did not come within the scope of the Original McLeese Multi-Pole Patent.

33.     It was further explained to Cobb that Iguana did not believe that the bednets which Iguana sold fell within the scope of the Original McLeese Multi-Pole Patent.

34.     At no time has Iguana believed that the bednets which it sold fell within the scope of any valid claim of either the Original McLeese Multi-Pole Patent or the McLeese Multi-Pole Reissue Patent

35.     In or about April 2006, the U.S. government, specifically the Defense Logistics Agency ("DLA") at the Defense Supply Center Richmond ("DSCR") contacted Iguana regarding an allegation that defendant Lanham, acting through defendants Calkins and the Kilpatrick Law Firm, had filed a notice of infringement of the McLeese Multi-Pole Reissue Patent with the DLA ("the Lanham DLA Infringement Claim").

36.    On information and belief, the Lanham DLA Infringement Claim filed with the DLA asserted that defendant Lanham owned the McLeese Multi-Pole Reissue Patent (Exhibit 2), and that the bednets being supplied to the DLA by Iguana infringed the McLeese Multi-Pole Reissue Patent.

37.    Notably, the online assignment records of the U.S. Patent and Trademark Office ("the USPTO") failed to reflect that any assignment of the McLeese Multi-Pole Reissue Patent (whether to defendant Lanham, or anyone else) was ever recorded.

38.    As a result of the Lanham DLA Infringement Claim, the DLA advised Iguana that it would not approve payment of monies owed to Iguana pending the resolution of the Lanham DLA Infringement Claim.

39.    Iguana was required to respond to the Lanham DLA Infringement Claim before the U.S. government, acting through the DLA, would make any further payments to Iguana, including payments of monies which the DLA had previously acknowledged to be due Iguana.

40.    At Iguana's expense, suitable documentation was provided to the DLA to satisfy it that Iguana was not, in fact, infringing the McLeese Multi-Pole Reissue Patent.

41.    In addressing the issues raised by the Lanham DLA Infringement Claim, Iguana pointed out that the claims of the Original McLeese Multi-Pole Patent and the subsequent McLeese Multi-Pole Reissue Patent each required the presence of at least two poles in the shelter described in each of its claims.

42.    The bednets manufactured by Iguana and supplied to the DLA include only a single pole, as described and claimed in the Ivanovich Single-Pole Patent, rather than two poles as required and claimed in the McLeese Multi-Pole Reissue Patent which was allegedly being infringed according to the Lanham DLA Infringement Claim.

43.     The delay in payment of monies due Iguana was a direct consequence of defendants' improper and tortious interference with Iguana's business resulting from the frivolous filing of the Lanham DLA Infringement Claim.

44.     Accordingly, the filing of the DLA Protest interfered with Iguana's ability to conduct its legitimate business with the DLA to Iguana's detriment and damage.

45.     The Lanham DLA Infringement Claim was made on behalf of defendant Lanham by defendant Calkins, a partner in defendant Kilpatrick Law Firm.

46.     On or about April 11, 2006, an email, a true copy of which is annexed hereto as Exhibit 5 ("the Legal Representation Email"), was sent to defendant Calkins, confirming that Iguana was aware of the Lanham DLA Infringement Claim which he had made on behalf of defendant Lanham, and that that the Lanham DLA Infringement Claim was wholly without basis in fact or law.

47.     The Legal Representation Email further questioned defendant Calkins as to the ownership of the McLeese Multi-Pole Reissue Patent, specifically noting that no recorded assignment was available in the online records of the USPTO to show ownership of the McLeese Multi-Pole Reissue Patent by defendant Lanham.

48.     In addition to sending defendant Calkins the Legal Representation Email, at least six (6) separate telephone calls were placed to defendants Calkins and the Kilpatrick Law Firm to apprise them of the representation of Iguana with respect to any alleged infringement of the McLeese Multi-Pole Reissue Patent, as shown on the phone bill, a true copy of which is annexed hereto as Exhibit 6, in which the phone number (336) 607-7315, is the office phone number of defendant Calkins, as shown on Exhibit 7, defendant Calkins' firm biography.

49.     Defendant Calkins has subsequently acknowledged that he received the foregoing communications and that he was aware that Iguana was represented by counsel in connection with any claimed infringement by Iguana of the McLeese Multi-Pole Reissue Patent.

50.     Defendant Calkins never supplied the name and address of defendant Lanham to undersigned counsel, notwithstanding the Legal Representation Email sent to him.

51.     Further, the online system of the USPTO has never reflected that the McLeese Multi-Pole Reissue Patent was ever assigned, nor has it ever reflected that anyone named "Paul Lanham" was ever the assignee of any U.S. patent.

52.     Notwithstanding the fact that defendant Calkins had been advised of the lack of basis for any assertion of patent infringement against plaintiff based on the McLeese Multi-Pole Reissue Patent, and notwithstanding the fact that defendants Calkins and the Kilpatrick Law Firm had been apprised of the representation of Iguana by undersigned counsel, on or about December 17, 2007 defendants Calkins and the Kilpatrick Law Firm (acting through defendant Calkins), nevertheless, again took it upon themselves to communicate directly with plaintiff Iguana by letter ("the Infringement Letter"), a true copy of which is annexed hereto as Exhibit 8.

53.     In the Infringement Letter defendants, asserted the frivolous claim of alleged willful infringement of the McLeese Multi-Pole Reissue Patent by Iguana, the identical legal issue theretofore alleged in the Lanham DLA Infringement Claim.

54.     In sending the Infringement Letter directly to Iguana, defendants Calkins and the Kilpatrick Law Firm did so without the consent, permission, or authorization of undersigned counsel who was not even copied on that communication, all in violation of Rule 4.2(a) of the North Carolina Rules of Professional Conduct, which states:

**Rule 4.2 Communication with Person Represented by Counsel**

(a) During the representation of a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

55.     In the Infringement Letter (Exhibit 8), defendants Calkins and the Kilpatrick Law Firm, purportedly acting on behalf of defendant Lanham, specifically charged plaintiff Iguana with willful infringement of the McLeese Multi-Pole Reissue Patent despite their having been advised by counsel for Iguana that Iguana had no basis for believing that its bednets fell within the scope of any valid claim of any patent of defendant Lanham.

## FIRST CAUSE OF ACTION

## Declaratory Judgment of Non-Infringement

56.     Plaintiff Iguana hereby repeats and realleges each of the allegations set forth above.

57.     Plaintiff Iguana has always made and sold bednets in accordance with the teachings of the Ivanovich One-Pole Patent, which teaches the use of a single, resilient pole, rather than the multiple pole system as described and claimed in the McLeese Multi-Pole Reissue Patent.

58.     Specifically, each of the claims of the McLeese Multi-Pole Reissue Patent requires the presence of at least two poles, while plaintiff Iguana has never made or sold any bednets which have more than one pole.

59.     In particular, each of the claims of the McLeese Multi-Pole Reissue Patent (Exhibit 2) requires a first continuous resilient closed substantially planar loop base support member and at least a second support member, secured to the closed loop base support member at at least two points.

60.     Iguana has never manufactured, sold, or offered for sale any bednets which include more than one pole.

61.     Iguana has never manufactured, sold, or offered for sale any bednets which include a continuous resilient closed substantially planar loop base support member, as required by each of the claims of the McLeese Multi-Pole Reissue Patent.

62.     The bednets manufactured and sold by Iguana use a single multi-loop filiform element in the manner described in the Ivanovich Single-Pole Patent (Exhibit 3), as well as in other, prior art patents including U.S. Patent No. 3,848,615 entitled **COLLAPSIBLE AND FOLDABLE SHELTER** which issued to G.A. Warner, *et al.* on November 11, 1974 ("the '615 Patent"), which antedates the Original McLeese Multi-Pole Patent, the McLeese Multi-Pole Reissue Patent, and the Ivanovich Single-Pole Patent.  A true copy of the '615 Patent is attached as Exhibit 9.

63.     The teachings of the Ivanovich Single-Pole Patent (Exhibit 3) advanced the art over the teachings of the Original McLeese Multi-Pole Patent (Exhibit 1), as shown by the fact that the Original McLeese Multi-Pole Patent was specifically reviewed and cited during the examination of the application on which the Ivanovich Single-Pole Patent was based, as shown on the cover page of the Ivanovich Single-Pole Patent.

64.     The Ivanovich Single-Pole Patent lapsed due to the failure to timely pay a required Maintenance Fee, whereby the single pole bednet described therein, as manufactured by Iguana, is now in the public domain.

65.     The issuance of the Ivanovich Single-Pole Patent notwithstanding the prior issuance of the Original McLeese Multi-Pole Patent conclusively demonstrates that the single pole shelters described in the Ivanovich Single-Pole Patent, and manufactured by Iguana, are patentably distinct from the bednets described in the McLeese Multi-Pole Reissue Patent (Exhibit 2), the disclosure and claims of which require at least two poles.

66.     A case of actual controversy between plaintiff and defendant exists under 28 U.S.C. §§

2201 and 2202. A declaratory judgment will serve a useful purpose in clarifying and settling

legal relations at issue between the parties, and it will terminate and afford relief to plaintiff

Iguana from the uncertainty, insecurity, and controversy giving rise to this proceeding.

## SECOND CAUSE OF ACTION

### Unenforceability of the McLeese Multi-Pole Reissue Patent Due to Laches

67.     Plaintiff Iguana hereby repeats and realleges each of the allegations set forth above.

68.     On or about December 15, 1992, a civil action, captioned *Edward McLeese v. Richard

Clark, Michael Ivanovich, et als.*, Case No. 92-1928IEG(LSP) was initiated in the U.S. District

Court for the Southern District of California ("the California Action").

69.     McLeese was the plaintiff in the California Action and the named inventor on both the

Original McLeese Multi-Pole Patent (Exhibit 1) and the McLeese Multi-Pole Reissue Patent

(Exhibit 2).

70.     The defendants in the California Action were the named inventors in the now expired

Ivanovich Single-Pole Patent (Exhibit 3), namely Michael Ivanovich and Richard Clark, together

with a company called I.C. Hot and "Does 1 through 50".

71.     The complaint in the California Action, a true copy of which is attached hereto as Exhibit

10, alleged six Causes of Action, including its First Cause of Action for Patent Infringement, the

alleged infringement therein being that defendants Clark, Ivanovich, I.C. Hot, *et al.* allegedly

infringed the Original McLeese Multi-Pole Patent by making and selling the single pole self-

erecting shelter described in the Ivanovich Single-Pole Patent.

72.     Upon the filing of the California Action, the Report on Filing or Determination of an

Action Regarding a Patent, required by 35 U.S.C. § 290, a true copy of which is annexed hereto

as Exhibit 11 was duly filed with the Commissioner of Patents, thereby making the California

Action a matter of public record to anyone, particularly an assignee of the Original McLeese Multi-Pole Patent or the McLeese Multi-Pole Reissue Patent derived therefrom, whereby defendant Lanham and his counsel, defendants Calkins and the Kilpatrick Law Firm, were on public notice of the California Action.

73.    The California Action was terminated by a judgment entered on or about April 28, 1993, as shown by Exhibit 12 in which McLeese dismissed the entire action, including the patent infringement action, which he brought against the defendants in that action, with prejudice.

74.    The dismissal, with prejudice, of the action by McCleese against the defendants in the California action has been a matter of public record for almost fifteen years.

75.    Accordingly, defendants herein, namely, Lanham, Calkins, and the Kilpatrick Law Firm are bound by it to the extent that they are, and have been, asserting infringement of the McLeese Multi-Pole Reissue Patent (which is merely a reissue of the Original McLeese Multi-Pole Patent) against Iguana's single-pole bednets which are made in accordance with the teachings of the Ivanovich Single-Pole Patent.

76.    In view of the foregoing, and the fact that Iguana is, and always has been, making and selling bednets in accordance with the teachings of the Ivanovich, the efforts of defendants Calkins and the Kilpatrick Law Firm to assert the McLeese Multi-Pole Reissue Patent on behalf of defendant Lanham is collaterally estopped and constitutes, at best, a flagrant disregard for the underlying facts and law.

77.    As the alleged owner of the McLeese Multi-Pole Reissue Patent, defendant Lanham is in privity with McLeese, so he is bound by the judgment in the California Action, and he is thereby collaterally estopped from asserting it against anyone, including plaintiff Iguana, who is making a single-pole bednet identical to that made by Ivanovich and Clark which was the subject of the California Action.

78.     Further, the inaction of the defendants for two years equitably estops them from now asserting infringement against Iguana.

79.     A case of actual controversy between plaintiff and defendant exists under 28 U.S.C. §§ 2201 and 2202. A declaratory judgment will serve a useful purpose in clarifying and settling legal relations at issue between the parties, and it will terminate and afford relief to plaintiff Iguana from the uncertainty, insecurity, and controversy giving rise to this proceeding.

## THIRD CAUSE OF ACTION

### Unenforceability

80.     Plaintiff Iguana hereby repeats and realleges each of the allegations set forth above.

81.     As set forth in 35 U.S.C. § 281:

> § 281.  Remedy for infringement of a patent
> A patentee shall have remedy by civil action for infringement of his patent.

82.     35 U.S.C. § 261 provides that patents have the attributes of personal property, and it further provides that such rights can be recorded in the PTO.

83.     At no time has there been any document recorded in the PTO indicating the assignment, or licensing, of any rights in the McLeese Multi-Pole Reissue Patent to Lanham.

84.     On information and belief, and based further on the sworn testimony of defendant Calkins, there has never been any assignment of the McLeese Multi-Pole Reissue Patent to Lanham.

85.     In that Lanham is not, and has never been, the owner or patentee of the McLeese Multi-Pole Reissue Patent, he cannot legally enforce that patent.

86.     U.S. patents are subject to the payment of periodic Maintenance Fees which are due at times following their issue.  In the case of a reissue patent, the reissue patent is subject to the

same Maintenance Fees as would have been due had the patent not been reissued.  One of the required Maintenance Fees, called the "12 Year Maintenance Fee" is due 11½ years following the issue of a patent.

87.    The 12 Year Maintenance Fee  can be paid as late as 12 years following the original issue date of a patent, or, in the case of a reissue patent, the 12 Year Maintenance Fee can be paid, with a surcharge, as late as 12 years following the issue of the original patent from which the reissue patent was issued provided that a surcharge, in the proper amount is paid within the "grace period" of the six month period ending on the 12th anniversary of the issuance of a patent.

88.    Failure to timely pay a Maintenance Fee, or to make payment with surcharge within the "grace period" results in the expiration of a patent.

89.    Maintenance Fees and many other fees which become due in the PTO can be paid either as a "large entity" or as a "small entity" with the "small entity" fees being one-half those of the "large entity" fees.

90.    The payment of a fee as a "small entity" constitutes a representation by the party making the payment that the patentee is entitled to "small entity" status.

91.    37 C.F.R. § 1.27(h)(1) provides that any attempt to pay fees as a small entity is considered to be fraud on the [Patent] Office.

92.    On information and belief, the 12 Year Maintenance Fee, with surcharge, for the McLeese Multi-Pole Reissue Patent was paid as a "small entity" on the final date available for such payment, with such payments having been made as a "small entity".

93.    On information and belief, the 12 Year Maintenance Fee, and surcharge, paid in connection with the McLeese Multi-Pole Reissue Patent were refunded by the PTO.

94.    On information and belief, at the time that the 12 Year Maintenance Fee, and surcharge, were paid, there was no entitlement to "small entity" status.

95.     On information and belief, at the time that the 12 Year Maintenance Fee, and surcharge, were refunded by the PTO, there was no entitlement to any refund.

96.     Based on the foregoing, the McLeese Multi-Pole Reissue Patent expired for failure to pay the 12 Year Maintenance Fee.

97.     Alternatively, based on the foregoing, the McLeese Multi-Pole Reissue Patent became unenforceable due to inequitable conduct and/or fraud on the PTO.

98.     In view of the foregoing, neither McLeese, nor Pacific, nor Lanham can now enforce the McLeese Multi-Pole Reissue Patent.

99.     As set forth in 28 U.S.C. § 1498(a),

> § 1498.  Patent and copyright cases
>
> (a) Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

100.    In view of 28 U.S.C. § 1498(a), even if the McLeese Multi-Pole Reissue Patent has not otherwise expired or become unenforceable due to the failure to timely pay the proper Maintenance Fee, the bednets manufactured by Iguana for the U.S. government had been within the scope of the McLeese Multi-Pole Reissue Patent, defendant Lanham's sole remedy would have been by action against the United States in the United States Court of Federal Claims.

101.    Wherefore the McLeese Multi-Pole Reissue Patent has expired or is otherwise unenforceable.

## FOURTH CAUSE OF ACTION

### Invalidity

102.    Plaintiff Iguana hereby repeats and realleges each of the allegations set forth above.

– 17 –

103.    The McLeese Multi-Pole Reissue Patent is invalid based on failure to comply with the requirements set forth in Title 35 of the U.S. Code, including but not limited to those set forth in §§ 102, 103, 112, and 251.

## FIFTH CAUSE OF ACTION

### Defamation

104.    Plaintiff Iguana hereby repeats and realleges each of the allegations set forth above.

105.    "Willful infringement" of a U.S. patent requires more than mere negligence.  It requires that the infringer act in an objectively reckless manner and in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.  In order for a person to be a "willful infringer" that person must be shown to have acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  *In re Seagate Technology, LLC*, 497 F.3d 1360 (CAFC 2007) (hereafter "*In re Seagate*")

106.    *In re Seagate* was decided by the CAFC on August 20, 2007, and it represented a major decision in that it clarified federal law regarding what constituted "willful infringement" of a U.S. patent.  As such, it was widely reported as a landmark legal holding.

107.    Defendant Calkins is an attorney at law, as well as a Registered Patent Attorney, and a partner in defendant Kilpatrick Stockton.

108.    Defendant Randall is an attorney at law and member of the California Bar.

109.    Defendants Calkins, Kilpatrick Stockton, and Randall are all charged with knowledge of the law, and by December 2007, when the Infringement Letter was published and republished by them, they should each have been aware of the landmark holding in *In re Seagate*.

110.    Defendants Calkins and Kilpatrick Stockton were also bound by Rule 4.2(a) of the North Carolina Rules of Professional Conduct.

111.    In view of the foregoing, defendants Calkins, Kilpatrick Stockton, and Randall were each on notice of the very high burden required to legally assert the defamatory charge of "willful infringement" of a U.S. patent, a charge which, on its face is a legal assertion of "objective recklessness", *In re Seagate*.

112.    Given their admitted awareness, since at least April 2006, that Iguana did not believe that its bednets came within the scope of any claim of the McLeese Multi-Pole Reissue Patent, and given the holding of the CAFC in *In re Seagate*, the assertion of "willful infringement" in the Infringement Letter was defamatory on its face.

113.    Given, also, Rule 4.2(a) of the North Carolina Rules of Professional Conduct of the Infringement Letter was a prohibited communication, as having been directed to a party known to be represented by counsel and as relating to the specific subject matter of that representation.

114.    Due to both the Infringement Letter being both a prohibited communication and one which was defamatory on its face its publication and transmission by the Lanham Defendants, Randall, and the MMI Defendants constituted defamation which was objectively done in bad faith, thereby being outside the scope of any protection afforded a simple infringement claim of the type which could be within the scope of *GP Industries, Inc. v. Eran Industries, Inc.*, 500 F.3d 1369 (CAFC 2007).

115.    The publication of the defamatory assertion of "willful infringement" was made to a number of others thereby causing damage to Iguana.

116.    The foregoing acts were conducted illegally, intentionally, and maliciously by the Lanham Defendants, Randall, and the MMI Defendants, wherefore they are liable for punitive damages.

## SIXTH CAUSE OF ACTION

### Tortious Interference

117.    Plaintiff Iguana hereby repeats and realleges each of the allegations set forth above.

118.    The foregoing acts of the Lanham defendants, Randall, and the MMI Defendants caused at least one supplier to delay shipment to Iguana of bednet components needed by Iguana to fulfill government contracts.

119.    The foregoing acts interfered with Iguana's legal and legitimate contract and business relationships in that they constituted (1) improper action and/or wrongful conduct by the Lanham defendants, Randall, and the MMI Defendants without privilege; (2) the foregoing defendants acted purposely and with malice and intent to injure Iguana, and did, in fact, injure Iguana; (3) the actions of the foregoing defendants induced a breach or contractual obligations and/or the failure of at least one of Iguana's suppliers to continue with its anticipated business with Iguana; and (4) such actions were proximately caused by the Lanham defendants, Randall, and the MMI Defendants.

120.    The foregoing acts were conducted illegally, intentionally, and maliciously by the Lanham Defendants, Randall, and the MMI Defendants, wherefore they are liable for punitive damages.

121.    Based on the foregoing intentional acts conducted in flagrant disregard for their professional obligations and ethics requirements, the actions of defendants Calkins and the Kilpatrick Law Firm transcended any legitimate legal representation, whereby their intentional, malicious actions rendered them direct, joint, and conspiratorial tortfeasors, independently liable for their willful, wanton actions.

## SEVENTH CAUSE OF ACTION

### Common Law Conspiracy

122.    Plaintiff Iguana hereby repeats and realleges each of the allegations set forth above.

123.    In that the Infringement Letter was a prohibited communication, and in that it contained defamatory remarks relating to Iguana as being a "willful infringer", its admitted publication by the Lanham Defendants, Randall, and the MMI Defendants was illegal and was not within the scope of any valid protection or privilege.

124.    The actions of the Lanham Defendants, Randall, and the MMI Defendants in sending the frivolous, unprivileged, defamatory, prohibited Infringement Letter to a number of suppliers of components for Iguana's bednets with the intent of intimidating them into not supplying Iguana were further acts of conspiracy by the foregoing defendants.

125.    The actions of the Lanham Defendants, Randall, and the MMI Defendants, even after they were notified in December 2005 and thereafter that Iguana had no valid belief that its bednets infringed any patent of McLeese constituted a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Iguana respectfully requests:

A.    A declaratory judgment that the McLeese Multi-Pole Patent is invalid.

B.    A declaratory judgment that Iguana has not infringed any valid claim of any patent belonging to defendant Lanham, including the McLeese Multi-Pole Reissue Patent.

C.    A declaratory judgment that the McLeese Multi-Pole Reissue Patent is not enforceable against Iguana with respect to Iguana's ongoing manufacture of a single pole bednet.

D.    Judgment against the Lanham Defendants, Randall, and the MMI Defendants that they defamed Iguana through the publication of the Infringement Letter for which Iguana shall be awarded compensatory and punitive damages against them, jointly and severally.

E.    Judgment against the Lanham Defendants, Randall, and the MMI Defendants that they have tortiously interfered with the business and contractual relationships of Iguana for

which Iguana shall be awarded compensatory and punitive damages against them, jointly and severally.

F.      All of the defendants permanently enjoined from further interference with plaintiff Iguana's bednet business, particularly, Iguana's business of supplying bednets to the U.S. government.

G.      This action should be considered to be an "exceptional case", and the court should award the costs of this action and plaintiff's reasonable attorneys' against the defendants, in accordance with 35 U.S.C. § 285.

H.      Plaintiff should be awarded such other and further relief as this honorable court may deem equitable and proper.

*A JURY TRIAL IS DEMANDED.*

Respectfully submitted,


Dated: __April 6, 2008__            By:_s/ Sanford J. Asman_____
                                    Sanford J. Asman
                                    Georgia Bar No. 026118
                                    Attorney for Plaintiff Iguana, LLC
                                    Law Office of Sanford J. Asman
                                    570 Vinington Court
                                    Atlanta, Georgia  30350
                                    Phone    :    (770) 391-0215
                                    Fax        :    (770) 668-9144
                                    E-mail    :    sandy@asman.com