IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

IGUANA, LLC,                          *

    Plaintiff,                      *

vs.                                   *        CASE NO. 7:08-CV-09(CDL)

PAUL E. LANHAM, an individual,        *
CHARLES W. CALKINS, an
individual, KILPATRICK STOCKTON       *
LLP, a limited liability
partnership, H. DAVID COBB, an        *
individual, FEDERAL MARKETING
SERVICE CORPORATION, an Alabama       *
corporation, and MONTGOMERY
MARKETING, INC., an Alabama           *
corporation,
                                      *
    Defendants.
_____       *

O R D E R

    This action arises from Plaintiff's alleged infringement upon a patent described as the McLeese Multi-Pole Reissue Patent, U.S. Patent No. Re. 35,571 ("Re '571").   In its presently pending complaint, Plaintiff asserts federal and state law claims regarding the applicability and enforcement of the patent.[1]  Plaintiff seeks a declaratory judgment under federal law that its self-erecting tents do not infringe upon this patent.  Plaintiff also alleges state law claims for tortious interference and common law conspiracy based upon

---

[1] "Present complaint" refers to Plaintiff's First Amended Complaint.

1

Defendants' conduct in their enforcement of the patent.[2] Plaintiff now seeks to amend his present complaint to add additional federal law claims that the patent is invalid and unenforceable due to laches, to clarify and expand upon his previously filed state law claims for tortious interference and conspiracy, and to add a new state law claim for defamation.

Defendants H. David Cobb, Federal Marketing Service Corporation ("FMSC"), and Montgomery Marketing, Inc. ("MMI") [hereinafter Cobb Defendants], along with Defendants Paul E. Lanham, Charles W. Calkins, and Kilpatrick Stockton LLP ("KS") [hereinafter Lanham Defendants], filed motions to dismiss Plaintiff's present complaint (Docs. 21 & 41). The Lanham Defendants also oppose Plaintiff's motion to amend its complaint on the grounds that the amendments relating to defamation and unenforceability of the patent due to laches are futile.[3] The Lanham Defendants also contend that Plaintiff's amendments as to its claims for tortious interference and conspiracy are likewise futile and that those claims should not be allowed for the same reasons that those claims in Plaintiff's present complaint should be dismissed.

---

[2] Plaintiff also alleged a federal claim of unenforceability due to collateral estoppel and/or equitable estoppel in its present complaint. However, this claim was voluntarily dismissed by Plaintiff on April 6, 2008. (*See* Pl.'s Notice of Voluntary Dismissal of 2d Cause of Action without Prejudice.)

[3] The Court notes that the Cobb Defendants failed to oppose Plaintiff's motion to amend its complaint.

In summary, one or more of the Defendants contend that the following claims do not state a claim upon which relief may be granted: Plaintiff's state law claims for tortious interference, conspiracy, and defamation, along with Plaintiff's federal law claim that the patent is unenforceable due to laches. The Court finds that the most efficient way to resolve the pending motions is to determine whether Plaintiff's proposed amended complaint that includes these claims states a claim upon which relief may be granted. If it does, then the amended complaint should be allowed. If a proposed claim does not state a claim, then that amendment should not be allowed.

For the following reasons, the Court grants Plaintiff's motion to amend in part, finding that Plaintiff shall be permitted to amend its complaint to include its proposed state law claims for tortious interference, conspiracy, and defamation. The Court finds that Plaintiff's proposed federal law claim for laches fails to state a claim upon which relief may be granted and therefore that amendment is futile and shall not be allowed. In light of these rulings, the Court finds that the pending motions to dismiss are now moot.[4]

---

[4] Plaintiff has also filed a Motion to Dismiss Counterclaim and Disqualify Kilpatrick Stockton (Doc. 27) which, as explained *infra* Discussion Section II, is denied in its entirety.

ALLEGATIONS OF PROPOSED AMENDED COMPLAINT[5]

## I.   Plaintiff's Product and the Applicable Patent

Plaintiff manufactures and supplies single-poled self-erecting tents called bednets.  (Proposed Am. Compl. ¶ 26; *see* Ex. 4 to Proposed Am. Compl.)  These bednets are inspired in design by an expired patent known as the Ivanovich Single Pole Patent.[6]  (Proposed Am. Compl. ¶ 25(c); *see* Ex. 3 to Proposed Am. Compl.)  The bednets are sold to the United States government and used by members of the United States military.  (Proposed Am. Compl. ¶ 28.)  During the years 2005 and 2006, Plaintiff contracted to supply bednets to the United States government.  (*Id.* ¶ 29.)

In December 2005, Cobb contacted Plaintiff and asserted that the Cobb Defendants had an exclusive license to another patent known as the McLeese Multi-Pole Patent.  (*Id.* ¶ 30.)  The Cobb Defendants contend that they have legal rights to both the Original McLeese Multi-Pole Patent and the McLeese Multi-Pole Reissue Patent, which are named for the inventor, Edward McLeese.[7]  (See Ex. 2 to Proposed

---

[5]The Court notes that in reviewing the pending motions, the Court must take the allegations in the complaint as true.  *See Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005).  Since the Court must determine whether Plaintiff's claims asserted in Plaintiff's proposed amended complaint are futile, the Court analyzes the allegations in the proposed amended complaint.

[6]Richard Clark and Michael Ivanovich, together with a company called I.C. Hot, were the named inventors of the now-expired Ivanovich Single-Pole Patent.  (Proposed Am. Compl. ¶ 70; *see* Ex. 3 to Proposed Am. Compl.)

[7]While the Original McLeese Multi-Pole Patent had already been surrendered as of the time that Cobb asserted it, it is virtually identical in substance to Re '571.  (Proposed Am. Compl. ¶ 31.)

Am. Compl.)  They maintained that Plaintiff's bednet infringed on the patent.  (*Id.* ¶ 30.)  Plaintiff claims that its bednets do not fall within the scope of the patent because its bednets were manufactured with a single pole, while the McLeese Multi-Pole Patent requires the presence of at least two poles.[8]  (Proposed Am. Compl. ¶¶ 32-33.)

## II.  The Lanham Defense Logistics Agency Infringement Claim

In April 2006, the Defense Logistics Agency ("DLA") at the Defense Supply Center Richmond contacted Plaintiff regarding an allegation that Lanham, acting through Calkins and KS, had filed a notice of infringement of the McLeese Multi-Pole Reissue Patent with the DLA ("Lanham DLA Infringement Claim").  (Proposed Am. Compl. ¶ 35.)  The Lanham DLA Infringement Claim asserted that Lanham owned the McLeese Multi-Pole Reissue Patent and that the bednets supplied to the DLA by Plaintiff infringed the McLeese Multi-Pole Reissue Patent.  (*Id.* ¶ 36.)  As a result of the Lanham DLA Infringement Claim, the DLA advised Plaintiff that it would not approve payment owed to it pending resolution of the claim.  (*Id.* ¶ 38.)  Plaintiff provided suitable documentation to satisfy the DLA that Plaintiff was

---

[8]Plaintiff contends that the outcome in the *McLeese v. Clark* case further supports its allegation that its product does not infringe on the McLeese patent.  In that case, Edward McLeese initiated a civil action in the U.S. District Court for the Southern District of California on December 15, 1992, against Richard Clark, Michael Ivanovich, and I.C. Hot alleging that the Ivanovich Single-Pole Patent infringed on the McLeese Multi-Pole Patent ("California Action").  (Proposed Am. Compl. ¶¶ 68-71; *see* Ex. 10 to Proposed Am. Compl.)  The California Action was dismissed with prejudice by a consent judgment on April 28, 1993 with no findings of fact or conclusions of law. (*See* Proposed Am. Compl. ¶ 73; *see also* Ex. 12 to Proposed Am. Compl.)

not infringing the McLeese Multi-Pole Reissue Patent.  (*Id.* ¶ 40.)
In response to the Lanham DLA Infringement Claim, Plaintiff's counsel
contacted Calkins via e-mail and informed him that there was "no
merit" to the Lanham DLA Infringement Claim.  (*Id.* ¶ 46; *see* Ex. 5 to
Proposed Am. Compl.)

### III.  The Infringement Letter

In late 2007, Lanham learned that Plaintiff's website displayed
bednet products for sale to the general public.  Therefore, Lanham
authorized Calkins, his counsel at the time, to send a cease and
desist letter to Plaintiff with respect to Plaintiff's offer to sell
to non-government parties.  (Proposed Am. Compl. ¶ 52.)  In December
2007, Calkins and KS communicated directly to Plaintiff by letter.
(*Id.*; *see* Ex. 8 to Proposed Am. Compl., Infringement Letter, Dec. 17,
2007 [hereinafter Infringement Letter].)  In the Infringement Letter,
Calkins and KS asserted a claim of willful infringement of the
McLeese Multi-Pole Reissue Patent.[9]  (Proposed Am. Compl. ¶ 52; *see*
Infringement Letter.)  Calkins and KS sent the Infringement Letter
directly to Plaintiff, without the consent, permission, or
authorization of Plaintiff's counsel.  (Proposed Am. Compl. ¶ 54.)
Lanham, through his son Randall Lanham, forwarded the Infringement
Letter to MMI.  (*See id.* ¶¶ 118-120.)  Cobb, President and Chief

---

[9]Specifically, Calkins and KS asserted in the Infringement Letter
that Lanham "believe[d] that Iguana LLC [was], and ha[d] been, infringing
US Re' 571, causing Mr. Lanham commercial harm," and that Plaintiff's
"infringement [was] willful."  (*See* Infringement Letter.)

Executive Officer of MMI and FMSC, later forwarded the Infringement Letter to additional suppliers.  (*See id.*)

## IV.  Plaintiff's Claims and Lanham's Counterclaim

On January 23, 2008, Plaintiff filed its First Amended Verified Complaint, seeking a declaratory judgment of non-infringement, and asserting claims of tortious interference and common law conspiracy. (1st Am. V. Compl. ¶¶ 43-87.)  On March 17, 2008, Lanham filed a counterclaim for patent infringement against Plaintiff, asserting that he was the exclusive sublicensee to Re '571 and that Plaintiff willfully infringed on his patent.  (*See* V. Ans. of Paul E. Lanham, Charles W. Calkins and Kilpatrick Stockton LLP and Counterclaim of Paul E. Lanham [hereinafter V. Ans.] 20-24.)

## V.  Plaintiff's Motion to Amend and Motion to Dismiss Counterclaim and Disqualify Counsel

On April 6, 2008, Plaintiff filed its Motion to Amend its First Amended Verified Complaint, seeking to add three new defendants[10] and assert amended claims for (1) declaratory judgment of non-infringement, (2) unenforceability of Re '571 due to laches, (3) unenforceability, (4) invalidity, (5) defamation, (6) tortious interference, and (7) common law conspiracy. (Proposed Am. Compl. ¶¶

---

[10]Plaintiff seeks leave to add Randall J. Lanham ("Randall"), Edward S. McLeese, and PacificTradingPost.com, Inc. ("Pacific") as defendants. (*See* Proposed Am. Compl. 1.)  Plaintiff alleges that Randall, on behalf of Lanham, forwarded the Infringement Letter to Plaintiff's suppliers. Plaintiff seeks to assert the claims of tortious interference, defamation, and common law conspiracy against Randall.  (*Id.* ¶¶ 114, 119, 123-125.) Plaintiff, alleging that McLeese and Pacific own Re '571, asserts claims for declaratory judgment of non-infringement, unenforceability, and invalidity against McLeese and Pacific.  (*Id.* ¶ 1.)

56-125.)   Plaintiff also filed a Motion to Dismiss Lanham's Counterclaim and Disqualify Counsel.

## VI.  Defendants' Motions to Dismiss

On March 17, 2008, the Lanham Defendants filed their motion to dismiss Plaintiff's First Amended Complaint as to the claims of tortious interference and common law conspiracy.  On July 3, 2008, the Cobb Defendants filed their motion to dismiss Plaintiff's First Amended Complaint as to the claims of tortious interference and common law conspiracy.[11]  All Defendants contend that Plaintiff's tortious interference and common law conspiracy claims contained in its present and proposed amended complaint fail to state a claim upon which relief can be granted.

DISCUSSION

## I.  Motion to Amend

### A.   Motion to Amend Standard

Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading[.]"  At any time thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  A "court should freely give leave when justice so requires."  *Id.*

---

[11]The Cobb Defendants contend, and Plaintiff does not dispute, that only Plaintiff's claims of tortious interference and common law conspiracy are directed against them, and are therefore, the only claims subject to their motion.  (*See* [Cobb] Defs.' Brief in Supp. of their Mot. to Dismiss 2; *see also* Pl.'s Memo. in Opp'n to [Cobb] Defs.' Mot. to Dismiss 5.)

However, a court may deny leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam); *see also Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006) (per curiam). The Eleventh Circuit has found that "'denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.'" *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

In determining whether a motion to amend is futile, the Court examines whether the proposed amended complaint is "subject to dismissal" under Federal Rule of Civil Procedure 12(b)(6). Under that standard, the Court determines whether, "construing the [proposed] complaint in the light most favorable to the plaintiff and accepting as true all facts which the plaintiff alleges," the proposed complaint fails to state a claim upon which relief may be granted. *Day*, 400 F.3d at 1275. The proposed amended complaint must include sufficient factual allegations "'to raise a right to relief above the speculative level'" and "'to raise a reasonable expectation that discovery will reveal evidence of'" the plaintiff's claim or claims. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir.

9

2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).

B.   Plaintiff's Motion to Amend

Plaintiff seeks leave to amend its First Amended Verified Complaint to assert claims of (1) declaratory judgment of non-infringement, (2) unenforceability of Re '571 due to laches, (3) unenforceability, (4) invalidity, (5) defamation, (6) tortious interference, and (7) common law conspiracy. As explained below, the Court grants Plaintiff's motion as to the claims of declaratory judgment of non-infringement, unenforceability, invalidity, tortious interference, common law conspiracy, and defamation.[12]   The Court denies Plaintiff's motion as to its unenforceability of Re '571 due to laches claim because the Court finds that it fails to state a valid cause of action and the amendment would thus be futile.

1.   *Tortious Interference Claim*

Under Georgia law, the elements of tortious interference with contract[13] are:

---

[12]Defendants do not oppose, nor does the Court find reason to deny, leave to amend Plaintiff's claims of declaratory judgment of non-infringement, unenforceability, and invalidity. (*See* Opp'n to Pl.'s Mot. For Leave to Amend its Am. Compl. 3.)   However, Defendants do oppose Plaintiff's proposed claims of unenforceability of Re '571 due to laches, tortious interference, common law conspiracy, and defamation. (*Id.* at 3-7.)

[13]The elements of tortious interference with business relations are substantially similar. *See Vito v. Inman*, 286 Ga. App. 646, 649, 649 S.E.2d 753, 757 (2007) (noting that a claim for tortious interference with business relations requires a showing that defendant "(1) acted improperly and without privilege; (2) acted purposely and with malice and the intent to injure; (3) induced a third party or parties not to enter into or

10

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a party or third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Culpepper v. Thompson*. 254 Ga. App. 569, 571, 562 S.E.2d 837, 840 (2002). Here, Plaintiff first alleges, as explained below, that Defendants have no legal rights to Re '571, and therefore, transmitted the Infringement Letter, which accused Plaintiff of willfully infringing Re '571, to Plaintiff's suppliers without privilege. (*See, e.g.*, Proposed Am. Compl. ¶¶ 83-85, 119.) As discussed more fully below, Plaintiff next alleges that Defendants knew when they sent the Infringement Letter to Plaintiff's suppliers that there was a bona fide disagreement regarding infringement and thus, Defendants acted purposely and with malice to injure Plaintiff when they accused Plaintiff of willful infringement. (*Id.* ¶¶ 33-34, 41-42.) Lastly, Plaintiff alleges that this conduct induced a breach of contractual obligations with at least one of Plaintiff's suppliers, resulting in damages which financially injured Plaintiff. (*Id.* ¶ 119.)

Defendants respond that they have legal rights to Re '571 and therefore, Plaintiff's tortious interference state law claim is preempted by federal patent law. "[F]ederal patent law preempts

---

continue a business relationship with the plaintiff, and (4) caused the plaintiff some financial injury").

state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004).  In other words, a patent owner is entitled to notify customers and potential customers of its patent rights unless the communication is made in bad faith.  *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007).  "[A] bad faith standard cannot be satisfied in the absence of a showing that the claims asserted were objectively baseless."  *Id.*  "The Supreme Court elaborated on the meaning of 'objectively baseless,' explaining that 'the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.'"  *Id.* (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)).

Although Defendants contend that they have legal rights to Re '571, Plaintiff sufficiently alleges in its Proposed Amended Complaint that Defendants have no legal rights to Re '571, and therefore, acted without privilege in transmitting the Infringement Letter.  Specifically, Plaintiff alleges that "[a]t no time ha[d] there been any document recorded in the [United States Patent and Trademark Office] indicating the assignment, or licensing, of any rights in the McLeese Multi-Pole Reissue Patent to Lanham" (Proposed Am. Compl. ¶ 83), and that therefore, because Lanham was never the

"owner or patentee of the McLeese Multi-Pole Reissue Patent, he [could not] legally enforce th[e] patent," (*Id.* ¶ 85).   The Court finds these factual allegations sufficient to support Plaintiff's contention that Defendants had no legal rights to Re '571.

Even if Plaintiff had not sufficiently alleged that Lanham had no legal rights to Re '571, Plaintiff sufficiently alleges that Defendants acted in bad faith in disseminating the Infringement Letter.   Specifically, Plaintiff alleges that Defendants were aware that Plaintiff's product was not sufficiently similar to the protected device.   (Proposed Am. Compl. ¶¶ 41-42.)   Furthermore, Plaintiff alleges that "suitable documentation was provided to the DLA to satisfy it that [Plaintiff] was not, in fact, infringing the McLeese Multi-Pole Reissue Patent," (*Id*. ¶¶ 40-42), and thus, the Lanham DLA Infringement Claim, which asserted patent infringement against Plaintiff, was without merit.   Therefore, Plaintiff contends that Defendants' subsequent allegation of willful infringement in the Infringement Letter was objectively baseless, and thus, done in bad faith.   (*See, e.g.*, *id.* ¶¶ 40, 52-53, 114.)   The Court finds these allegations sufficient to withstand a motion to dismiss.[14] Accordingly, the Court grants Plaintiff's motion to amend as to its tortious interference claim.   Because the Court finds that

---

[14]Although Defendants contend that they did not act in bad faith, Plaintiff's allegations to the contrary are sufficient to overcome a motion to dismiss.   *See Day*, 400 F.3d at 1275 (holding that a court must "constru[e] the complaint in the light most favorable to the plaintiff and accept[] as true all facts which the plaintiff alleges").

Plaintiff's tortious interference claim, as amended, states a valid cause of action, the Court denies as moot Defendant's Motions to Dismiss the First Amended Verified Complaint as to this claim.

### 2. Defamation Claim

To establish a claim for defamation, Plaintiff must assert sufficient facts of "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Smith v. Stewart*, 291 Ga. App. 86, 91, 660 S.E.2d 822, 828 (2008) (internal quotation marks omitted). Although Defendants contend that Plaintiff's proposed defamation claim fails to state a valid cause of action, the Court finds otherwise.

In its Proposed Amended Complaint, Plaintiff alleges that Defendants' publication and transmission of the Infringement Letter constituted defamation because Defendants were aware since April 2006 that there was a bona fide disagreement as to infringement, and thus, the assertion of "willful infringement" was defamatory. Specifically, Plaintiff alleges that because Defendants were aware that Plaintiff's bednet was not sufficiently similar to Re '571, Plaintiff could not have willfully infringed on the protected patent, and therefore, Defendants' assertion to the contrary was false and defamatory. (*See, e.g.*, Proposed Am. Compl. ¶¶ 32-34, 41-42, 114; *see also In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir.

14

2007) ("[T]o establish willful infringement, a patentee must show . . . that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and that "this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer.").)  In other words, Plaintiff alleges that because it did not act "despite an objectively high likelihood that its actions constituted infringement" of Re '571, *In re Seagate Tech., LLC*, 497 F.3d at 1371, Defendants' allegation of willful infringement was false and defamatory.

Plaintiff next alleges that the communication was unprivileged because Defendants had no legal rights to Re '571, and that even if they did, the Infringement Letter was sent in bad faith, "thereby being outside the scope of any protection afforded a simple infringement claim[.]"[15] (Proposed Am. Compl. ¶ 114; *see GP Indus., Inc.*, 500 F.3d at 1374 (noting that a patent owner is entitled to notify customers of its patent rights unless the communication was made in bad faith).)  Furthermore, Plaintiff alleges that the publication of the "defamatory" Infringement Letter was "made to a number of others thereby causing damage" to Plaintiff.  (Proposed Am. Compl. ¶ 115.)  The Court finds Plaintiff's allegations in its proposed defamation claim sufficient to state a valid cause of action

---

[15]*See supra* Discussion Section I(B)(1) for a detailed discussion regarding Plaintiff's factual allegations of Defendants' bad faith.

and therefore, Plaintiff's motion to amend to add a defamation claim is granted.

>   3.   *Common Law Conspiracy*

"A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207, 573 S.E.2d 455, 461 (2002) (internal quotation marks omitted). Without an underlying tort, there is no liability for civil conspiracy. *Id.* "Although interference with contractual relations may occur by means of a conspiracy, there must exist a wrongful interference before any liability may be imposed." *Rose v. Zurowski*, 236 Ga. App. 157, 158, 511 S.E.2d 265, 266 (1999).

Defendants contend that Plaintiff's common law conspiracy claim fails because Defendants neither acted wrongfully nor tortiously when they transmitted the Infringement Letter. However, because the Court finds that Plaintiff's defamation and amended tortious interference claims state valid causes of action, the Court also finds that Plaintiff's common law conspiracy claim states a valid cause of action. (*See, e.g.*, Proposed Am. Compl. ¶¶ 123-125.) Accordingly, the Court grants Plaintiff's motion as to this claim. Because the Court finds that Plaintiff's common law conspiracy claim, as amended, states a valid cause of action, the Court denies as moot Defendants' Motions to Dismiss the First Amended Verified Complaint as to this claim.

16

                4.     *Unenforceability of the McLeese Multi-Pole Reissue Patent Due to Laches Claim*[16]

---

[16]Plaintiff mentions laches only in the caption of its cause of action. (*See* Proposed Am. Compl. ¶¶ 67-79.) The allegations are identical to Plaintiff's unenforceability due to collateral estoppel and/or equitable estoppel claim, which was voluntarily dismissed. To the extent that Plaintiff, by pleading these identical facts, seeks to reinstate its claim of unenforceability due to collateral estoppel and/or equitable estoppel, Plaintiff fails to state a claim upon which relief can be granted. First, Plaintiff fails to allege facts sufficient to support equitable estoppel, which has three elements: "[1] [t]he actor, who usually must have knowledge of the true facts, communicates something in a misleading way . . .; [2] [t]he other relies upon that communication[;] [3] [a]nd the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (first, fourth, and seventh alterations in original). Not only has Plaintiff failed to allege facts of a misleading communication, but Plaintiff has also failed to allege facts of reliance or material harm if Defendant is permitted to file a claim of patent infringement against Plaintiff.

Second, Plaintiff has failed to allege facts sufficient to support collateral estoppel. To claim the benefit of collateral estoppel, Plaintiff must establish four elements:

    (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998) (internal quotation marks omitted). Although Plaintiff alleges that Lanham is collaterally estopped from bringing a claim of patent infringement against Plaintiff because of the consent judgment issued in the California Action (Proposed Am. Compl. ¶ 77), "a consent judgment cannot constitute collateral estoppel unless the party pleading collateral estoppel proves from the record of the prior case or through extrinsic evidence that the parties intended the consent judgment to operate as a final adjudication of a particular issue," *Balbirer v. Austin*, 790 F.2d 1524, 1528 (11th Cir. 1986). Here, Plaintiff has failed to allege that any issues of fact or law were actually adjudicated in the California Action or that the California Action contained any statements regarding the parties' intent that the consent judgment operate as a final adjudication of a particular issue. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted as to the claims of equitable estoppel and collateral estoppel.

Laches is defined as the "neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." *A.C. Aukerman Co.*, 960 F.2d at 1028-29. Specifically, the two elements underlying a laches claim are: (1) "the patentee's delay in bringing suit was unreasonable and inexcusable" and (2) "the alleged infringer suffered material prejudice attributable to the delay." *Id.* at 1028.

The Court finds that Plaintiff has failed to allege sufficient facts of either element. First, Plaintiff fails to allege that Lanham's two-year delay[17] in bringing a patent infringement claim was unreasonable and inexcusable. Second, Plaintiff fails to allege that the delay caused economic prejudice, such as "the loss of monetary investments." *See id.* at 1033; *see also Studiengesellschaft Kohle v. Eastman Kodak Co.*, 616 F.2d 1315, 1326-27 (5th Cir. 1980)[18] (recognizing that the expenditure of capital investments in order to expand production connected with an alleged infringing article constitutes economic prejudice). Because Plaintiff failed to allege

---

[17]The presumption of laches, which occurs when proof is presented "that the patentee delayed filing suit for more than six years after actual or constructive knowledge of the . . . alleged infringing activity," *A.C. Ackerman Co.*, 960 F.2d at 1035-36, does not apply here because it is undisputed that Lanham only became aware of Plaintiff's alleged infringing activity in 2006, (Proposed Am. Compl. ¶ 78).

[18]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

sufficient facts to state a valid cause of action, Plaintiff's motion as to this claim is denied.

## II.  Plaintiff's Motion to Dismiss Counterclaim and Disqualify KS

Plaintiff contends that Lanham's counterclaim for patent infringement fails to state a claim upon which relief can be granted. Plaintiff also contends that KS should be disqualified as counsel for Lanham under Rule 3.7 of the Georgia Rules of Professional Conduct. For the following reasons, the Court denies Plaintiff's motion in its entirety.

### A.  Plaintiff's Motion to Dismiss

The Court evaluates a Rule 12(b)(6) motion to dismiss a counterclaim in the same manner as a motion to dismiss a complaint. Only a "short and plain statement" of the counterclaim that will give Plaintiff fair notice of what Defendant's counterclaim is and the grounds upon which it rests are required. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (internal quotation marks omitted). However, a counterclaim must include sufficient factual allegations "to raise a right to relief above the speculative level" and "to raise a reasonable expectation that discovery will reveal evidence of" Defendant's counterclaim. *Watts*, 495 F.3d at 1295 (internal quotation marks omitted).

Plaintiff contends that Lanham's counterclaim fails as a matter of law because Lanham has no legal rights in the patent in question and thus has no cause of action for patent infringement. The Court

finds that Lanham asserted sufficient facts to support his contention that he is the exclusive sublicensee to Re '571.  Specifically, Lanham asserts that "[o]n April 26, 1999, [he] acquired his rights and interest to US Re '571, including all right to recover for past, present and future infringement" (V. Ans. 21 ¶ 7), and therefore, he was the exclusive sublicensee to Re '571, (*Id.* at 20 ¶ 1).  Because an exclusive sublicensee has standing under 35 U.S.C. § 281 to file an infringement action in his own name, *see Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 761 F.2d 649, 653 (Fed. Cir. 1985), the Court finds that Lanham's counterclaim states a valid cause of action.  Accordingly, Plaintiff's motion to dismiss is denied.[19]

   B.   Plaintiff's Motion to Disqualify Counsel

   Plaintiff contends that an apparent conflict exists under Rule 3.7 of the Georgia Rules of Professional Conduct.  Specifically,

---

[19]The Court notes that the parties went outside of the pleadings in support of their arguments on this motion.  Specifically, in support of Plaintiff's assertion that Lanham has no legal rights to Re '571, Plaintiff referenced testimony from the February 14, 2008 Temporary Restraining Order Hearing.  (*See* Pl.'s Mem. in Supp. of Mot. to Dismiss Countercl. and Disqualify Counsel 2; *see also* Pl.'s Reply to Opp'n to Pl.'s Mot. to Dismiss Countercl. and to Disqualify Counsel 3-7.) Defendants attached and referenced a declaration and exhibits in support of their assertion that Lanham is the exclusive sublicensee of Re '571. (*See* Opp'n to Pl.'s Mot. to Dismiss Countercl. and to Disqualify Counsel 3-4; *see also* Ex. A to Opp'n to Pl.'s Mot. to Dismiss Countercl. and to Disqualify Counsel.)  The Court's analysis, in reviewing a motion to dismiss, must be "limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997) (per curiam).  Therefore, the Court did not examine and analyze these documents because they fell outside of the pleadings.  Furthermore, the Court declines to convert Plaintiff's motion to dismiss to a motion for summary judgment.  That motion may be made at the appropriate time by a separate motion.

Plaintiff contends that a conflict exists because (1) Calkins formerly represented Lanham, (2) Calkins and KS are Lanham's co-Defendants, and (3) Calkins is a necessary witness in this action. (*See* Pl.'s Memo. in Supp. of Mot. to Dismiss Countercl. and Disqualify KS 2-3.) The local rules of this Court and federal common law govern motions to disqualify. *Hermann v. Gutterguard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006) (per curiam). "The party bringing the motion to disqualify bears the burden of proving the grounds for disqualification." *Id.* The Court notes that because a "disqualification order 'is a harsh sanction, often working substantial hardship on the client,'" it should "'be resorted to sparingly.'" *Id.* (quoting *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982)). The local rule of this Court, M.D. Ga. R. 83.2.1(A), provides that attorneys practicing in this Court "shall be governed by this Court's Local Rules, by the Rules of Professional Conduct adopted by the [Georgia Supreme Court], . . .[and] the American Bar Association Model Rules of Professional Conduct." The Georgia Supreme Court and the ABA's Model Rules employ an identical Rule 3.7. Georgia Rule 3.7 provides, in pertinent part:

> (a)  A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1)  the testimony relates to an uncontested issue;
> (2)  the testimony relates to the nature and value of legal services rendered in the case; or
> (3)  disqualification of the lawyer would work substantial hardship on the client.

(b)   A lawyer may act as advocate in a trial in which
      another lawyer in the lawyer's firm is likely to be
      called as a witness unless precluded from doing so by
      Rule 1.7[20] or Rule 1.9.[21]

Clearly Rule 3.7(a) is inapplicable in this case because there

is no dispute that Calkins does not represent Lanham in this present

---

[20]Rule 1.7 of the Georgia Rules of Professional Conduct provides, in
pertinent part:

(a)   A lawyer shall not represent or continue to represent a
      client if there is a significant risk that the lawyer's
      own interests or the lawyer's duties to another client,
      a former client, or a third person will materially and
      adversely affect the representation of the client, except
      as permitted in (b).

(b)   If client consent is permissible a lawyer may represent
      a client notwithstanding a significant risk of material
      and adverse effect if each affected or former client
      consents, preferably in writing, to the representation
      after:

      (1)   consultation with the lawyer,
      (2)   having received in writing reasonable and adequate
            information about the material risks of the
            representation, and
      (3)   having been given the opportunity to consult with
            independent counsel.

(c) Client consent is not permissible if the representation:

      (1)   is prohibited by law or these rules;
      (2)   includes the assertion of a claim by one client
            against another client represented by the lawyer in
            the same or substantially related proceeding; or
      (3)   involves circumstances rendering it reasonably
            unlikely that the lawyer will be able to provide
            adequate representation to one or more of the
            affected clients.

[21]Rule 1.9 of the Georgia Rules of Professional Conduct provides, in
pertinent part, that a lawyer shall not represent interests adverse to
those of a former client or use information obtained from a former client
to the client's disadvantage.   The Court notes that Rule 1.9 does not
apply in this case because there are no facts to suggest that there is a
former conflict of interest in this case.

22

action.[22]    Furthermore, the Court finds that Rule 3.7(b) does not prohibit KS from representing Lanham.  The Court finds that Plaintiff has failed to demonstrate that KS has a conflict of interest in representing Lanham in this present action.  While Plaintiff contends that there is a conflict of interest because Calkins previously represented Lanham and now KS represents Lanham, KS attorneys other than Calkins may represent Lanham in this action because Rule 3.7(b) does not recognize imputed disqualification.[23]  *See* ABA/NBA Lawyer's Manual on Prof'l Conduct Reference Manual [hereinafter Manual] § 61:501 ("An individual lawyer's disqualification is not imputed to his or her partners and associates.").[24]  Therefore, the Court finds no cause to disqualify KS and, accordingly, Plaintiff's motion to disqualify is denied.

CONCLUSION

In summary, the Court rules as follow:

(1)  Plaintiff's Motion for Leave to Amend First Amended Verified Complaint (Doc. 25) is granted in part and denied in part.  Plaintiff shall file its amended complaint, excising from it Plaintiff's claim for unenforceability of the patent based upon laches, within fourteen days from the date of this Order.  Defendants shall respond within twenty days from the date Plaintiff's amended complaint is filed;

---

[22]KS attorneys Susan A. Cahoon and Jill Warner represent Lanham.

[23]Georgia Rule of Professional Responsibility 1.10(a) is the sole provision that provides for imputed disqualification on an entire firm. Notably, Rule 3.7 and its rules against attorneys acting as witnesses are not included in the imputation provision.  Accordingly, as no ethical rule exists to impute disqualification onto KS based upon Calkins's potential necessity as a witness, KS cannot be disqualified on this basis.

[24]Section 61:501 of the Manual references Model Rule 3.7.

(2)   Randall  J.  Lanham,  Edward  S.  McLeese,  and
      PacificTradingPost.com, Inc. are added as parties and shall
      be promptly served as provided by law;

(3)   The Lanham Defendants' Motion to Dismiss (Doc. 21) is
      denied as moot;

(4)   The Cobb Defendants' Motion to Dismiss (Doc. 41) is denied
      as moot; and

(5)   Plaintiff's Motion to Dismiss Counterclaim and Disqualify
      Kilpatrick Stockton (Doc. 27) is denied.

The Court further orders that the Status Conference previously scheduled for January 7, 2009 at 10 a.m. shall be rescheduled for January 15, 2009 beginning at 2 p.m. at the Federal Courthouse in Columbus, Georgia.  The parties shall present a jointly proposed amended Scheduling/Discovery Order to the Court for consideration at that conference.  Plaintiff shall ensure that the newly added Defendants are provided with reasonable notice of the status conference.

IT IS SO ORDERED, this 19th day of December, 2008.


                                        S/Clay D. Land
                                        CLAY D. LAND
                                UNITED STATES DISTRICT JUDGE