IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| IGUANA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File No. 7:08-CV-00009- |
| | ) | CDL |
| PAUL E. LANHAM, an individual, | ) | |
| | ) | |
| CHARLES W. CALKINS, an individual, | ) | |
| | ) | |
| KILPATRICK STOCKTON LLP, a limited | ) | |
| liability partnership, | ) | |
| | ) | |
| H. DAVID COBB, an individual, | ) | |
| | ) | |
| FEDERAL MARKETING SERVICE | ) | |
| CORPORATION, an Alabama corporation, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MONTGOMERY MARKETING, INC., an | ) | |
| Alabama corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSE TO IGUANA LLC'S MOTION FOR SANCTIONS**

# TABLE OF CONTENTS

I.    BACKGROUND ...................................................................................................1

    A.    Iguana's Alleged Causes of Action for Damages. ............................................1

    B.    Discovery Schedule. ........................................................................................3

    C.    Kilpatrick's Discovery of Additional Materials Relevant to
           Phase I. ............................................................................................................4

II.    FACTS ................................................................................................................6

    A.    Facts Concerning Kilpatrick's Identification, Review, and
           Production of the Breakthrough Materials. ......................................................9

    B.    Facts Concerning Counsel's Decision to Inform the Court and
           the Parties. ......................................................................................................11

    C.    Facts Concerning Counsel's Communications with Plaintiff's
           Counsel, Mr. Asman, and Mr. Asman's Prior Knowledge of the
           Breakthrough Technologies Matter. ...............................................................12

    D.    Facts Concerning Counsels' Attempts to Negotiate a Proposed
           Consent Motion to Provide Iguana with Additional Discovery
           Time. ...............................................................................................................13

III.    IGUANA'S MOTION FOR SANCTIONS IS UNWARRANTED ...........................16

    A.    The Circumstances Do Not Demonstrate Discovery Abuse or
           Other Improper Conduct by Any of the Kilpatrick Defendants. ......................16

    B.    There is No Factual or Legal Basis for Imposing Sanctions
           Under Rule 37 ................................................................................................17

    C.    Conclusion. .....................................................................................................19

US2008 1050232.3

# TABLE OF AUTHORITIES

## Cases

*Carlucci v. Piper Aircraft Corp.*,
   775 F.2d 1440 (11th Cir. 1985) .......................................................................................... 18

*Gratton v. Great Am. Commc'ns*,
   178 F.3d 1373 (11th Cir. 1999) ......................................................................................... 18

*Hessenthaler v. Advantage Counseling Servs., Inc.*,
   No. 3:07-CV-107(CDL), 2009 WL 111636 (M.D. Ga., Jan. 15, 2009) ............................ 18

*Malautea v. Suzuki Motor Co., Ltd.*,
   987 F.2d 1536 (11th Cir. 1993) ......................................................................................... 18

*OFS Fitel, LLC v. Epstein, Becker & Green P.C.*,
   549 F.3d 1344 (11th Cir. 2008) ......................................................................................... 18

*Wouters v. Martin County, Fla.*,
   9 F.3d 924 (11th Cir. 1993) ............................................................................................... 18

## Statutes

Fed. R. Civ. P. 37 ................................................................................................................ 17, 18

Fed. R. Civ. P. 6 ........................................................................................................................ 4

Local Rule 7 ................................................................................................................................ 4

US2008 1050232.3

The Motion for Sanctions filed by Iguana LLC ("Iguana") is unwarranted and grounded in factual inaccuracies. The ostensible basis for Iguana's allegation that Kilpatrick Stockton ("Kilpatrick") has "lied to Court and counsel" is Kilpatrick's good faith disclosure of December 1, 2009, to the Court and the parties that Kilpatrick had recently discovered additional potentially responsive materials that were not timely reviewed for production in Phase I of discovery in this matter. According to Iguana, Kilpatrick's good faith disclosure of its mistake and acknowledgement that Iguana ought not to be prejudiced by Kilpatrick's failure earlier to identify the materials at issue, and Kilpatrick's attempts to agree on a consent motion providing for an enlargement of Phase I of discovery, are somehow improper attempts "to gain a benefit" for which Kilpatrick and its counsel should be sanctioned.

Iguana attempts to equate what it mischaracterizes as Kilpatrick's failure to meet a "self imposed deadline" for production of additional responsive documents with violation of a Court order. On that dubious basis, Iguana contends that the Kilpatrick Defendants should be sanctioned pursuant to Rule 37 with an order to pay Iguana's counsel fees in connection with its ill-founded motion and that Defendant Paul Lanham should be sanctioned with an order forcing him to dismiss his counterclaim for infringement. As further explained below, Iguana's allegations are without merit, and neither of the requested sanctions is warranted.

## I.    BACKGROUND

### A.    Iguana's Alleged Causes of Action for Damages.

In its complaint, originally filed in January 2008, and amended on January 23, 2008, January 9, 2009, and January 21, 2009, Iguana has alleged that Kilpatrick, Kilpatrick partner

Charles Calkins, and Kilpatrick's client Paul Lanham[1] conspired together with the other defendants to defame Iguana and tortiously to interfere in its business relations by (a) sending correspondence to the Defense Logistics Agency ("DLA"), pursuant to agency grievance procedures, alleging that Iguana's "bednets" infringed U.S. Patent No. RE 35, 571, for which Paul Lanham held an exclusive license, and (b) sending a demand letter in December 2007 to Iguana, copies of which were received by two of Iguana's suppliers, demanding that Iguana cease willful infringement of U.S. Patent No. RE 35, 571. *See, e.g.*, Second Amended Complaint (Revised), Dkt. No. 60, at ¶¶ 39-40, 48-49, 87-108. Iguana seeks to collect compensatory and punitive damages, contending that the conduct of the Kilpatrick Defendants injured Iguana by causing the loss of a government contract worth over 30 million dollars, as follows: Because Iguana's suppliers' knowledge of the DLA action and December 2007 demand letter allegedly caused them to be untimely in performing contractual obligations to Iguana, Iguana was unable to fulfill its contractual obligations to the government, which then allegedly caused the government to lower Iguana's "ABVS" rating or "performance score," which later allegedly caused the government to award a 30 million dollar bednet contract to Defendant MMI, not Iguana. *See, e.g.*, Second Amended Complaint, Dkt. No. 50, at ¶¶ 126, 129-143; Plaintiff Iguana LLC's Reply Memorandum, Dkt. No. 79, at 2.

In June 2008, Iguana also filed a complaint in state court against its supplier Patriot Performance Materials ("Patriot"). Iguana has alleged in *that* action that Iguana's low performance score and failure to meet government contract obligations were caused by Patriot's breach of contract: "as a direct result of Patriot's non-performance under its contract

---

[1]      Collectively referred to herein as the "Kilpatrick Defendants."

US2008 1050232.3

with Iguana, Iguana has suffered negative performance ratings with the Defense Supply Center . . . has incurred penalties from the Defense Supply Center . . . [and] is in default on its contracts with the U.S. Military." *See* Complaint in Civil Action No. 08-CV-803, in the Superior Court of Thomas County, Georgia, attached as Ex. A, at ¶¶ 60-62. Iguana alleged that "Patriot's nonperformance under its contract with Iguana" constituted "delaying and stalling," "continuously fabricating reasons why Patriot was late in its deliveries," "false representations" about whether Iguana sent a truck to pick up materials, refusal to load materials on an Iguana truck, cutting bednet parts incorrectly, and sending shipments to Iguana COD. *Id.* at ¶¶14,-15, 32-36, 40-41, 43-44, 46-47, 49, 51. On November 3, 2008, the case against Patriot was removed to federal court. Iguana has resisted Patriot's pending summary judgment motion on numerous grounds, but still appears to be contending that Patriot is liable for the same damages that Iguana seeks to recover from the defendants in this matter. *See Iguana LLC v. Patriot Performance Materials, Inc.*, 7:08-cv-00141-HL, Dkt. Nos. 16 and 18, attached as Ex. B and Ex. C, respectively.

### B.    Discovery Schedule.

Pursuant to the Court's Scheduling Order, discovery in this action was trifurcated. (Rule 16 and 26 Scheduling and Discovery Order, Dkt. No. 83.) Phase I of discovery, to which Iguana's present motion relates, concerns ownership and enforcement of license rights in U.S. Patent Re 35, 571 – specifically, whether Kilpatrick's client Paul Lanham has valid and enforceable license rights in Re '571, a patent that has now expired. *Id.* at 14-15. Both of the parties served broad document requests asking, essentially, for all documents relating to license rights. The Kilpatrick defendants also specifically requested documents relating to the "Exclusive Military License" to Breakthrough Technologies that was identified in

3

Plaintiff's Initial Disclosures.[2]    After the Court granted the parties' joint motion for an extension of time (Dkt. No. 88 and text-only Order), fact discovery in Phase I closed on October 23, 2009. *Id.* Dispositive motions relating to Phase I were due on November 6, 2009, with responses due on November 30, 2009, and replies on December 14, 2009. *Id.*; Fed. R. Civ. P. 6; L. R. 7.

**C.    Kilpatrick's Discovery of Additional Materials Relevant to Phase I.**

After Phase I of discovery closed --- and after the due date for dispositive motions, Kilpatrick identified what it believed to be additional potentially responsive materials relating to "Breakthrough Technologies," an entity for which a former Kilpatrick attorney performed legal services in the late 1990s. As Kilpatrick indicated in its letter of December 1, 2009 (Dkt. No. 94), Kilpatrick believed it appropriate to disclose its failure earlier to identify and review those Breakthrough materials because they were potentially responsive to a broad construction of Iguana's discovery requests in Phase I, given the existence of a document entitled "Exclusive Military License" (earlier disclosed by Iguana) identifying Breakthrough Technologies as a licensee.

Kilpatrick has since discovered that at least some, if not all, of the materials at issue have long been in the possession of counsel for Iguana, Mr. Sanford Asman, who has confirmed that he is well aware of Breakthrough Technologies (indeed, the file that

---

[2]    The Kilpatrick Defendants' Request No. 5 specifically seeks "all documents and things in Plaintiff's possession and/or control concerning licenses relating to RE 35, 571, including without limitation the "Exclusive Military License" referenced in Plaintiff Iguana LLC's Initial Disclosures."    Request No. 2 seeks "all documents and things in Plaintiff's possession and/or control relating to assignment, license, or other transfer of rights at any time in US Patent no 4, 8585,634 and/or US Patent RE 35, 571, such rights including, but not limited to, the right to enforce US Patent No 4, 858,634, and/or RE 35, 571." *See* First Requests for Production of Documents and Tangible Things by Defendants Paul E. Lanham, Charles W. Calkins, and Kilpatrick Stockton LLP to Iguana LLC, July 27, 2009, attached as Ex. D.

Kilpatrick previously overlooked contains emails from Mr. Asman). If the materials relating to Breakthrough are indeed responsive to a broad construction of the discovery requests served on the Kilpatrick Defendants, Kilpatrick believes that they are also responsive to the discovery requests that were served on Iguana in July of 2009, which specifically call out documents relating to the "Exclusive Military License" to Breakthrough. *See* Ex. D, Nos. 2 and 5. Iguana has not produced any Breakthrough-related documents beyond a copy of the "Exclusive Military License" and a patent, emailed to counsel for Kilpatrick on December 1. Iguana's summary judgment motion brought at the close of Phase I does not reference Breakthrough Technologies, and Iguana's counsel has very recently taken the position that none of the documents relating to Breakthrough in his possession are relevant to Phase I discovery.

Iguana's present motion for sanctions thus relates to Kilpatrick's belated, good faith disclosure of materials that were already known to Iguana's counsel and are not relevant to any of Iguana's pending arguments for summary judgment concerning the Phase I issues. Nonetheless, Kilpatrick yet believes that Iguana should be permitted an enlargement of Phase I of discovery to review and analyze any responsive materials that were not produced before Phase I ended. As further detailed below, Kilpatrick has attempted to work in good faith with Mr. Asman to agree on a consent motion and order providing for such an enlargement of time. Kilpatrick does not, however, agree that its failure earlier to identify these materials warrants the sanctions sought by Iguana, especially in light of Mr. Asman's prior knowledge of Breakthrough Technologies, which he did not deem relevant or responsive to the Kilpatrick Defendants' Phase I discovery requests.

## II.    FACTS

As further detailed below, Iguana's motion is rife with prejudicial misrepresentations. Contrary to Iguana's contentions:

- The Kilpatrick Defendants did *not* "ignore" discovery requests during Phase I. The Kilpatrick Defendants provided timely responses. When Kilpatrick discovered after the close of Phase I of discovery that it had additional materials that might be responsive to a broad construction of Iguana's document requests, Kilpatrick immediately took steps to identify and review all such materials and to disclose and accept responsibility for its untimely discovery.

- Kilpatrick's counsel Ms. Cahoon did *not* "fail to disclose" the existence of the additional potentially relevant documents while Iguana completed "substantial briefing" on its motion for summary judgment. Counsel were not aware of the materials at issue until *after* Iguana had filed its motion.

- Kilpatrick did *not* act improperly by disclosing its untimely discovery of the Breakthrough materials to the Court and the parties, rather than solely to Plaintiff's counsel. Kilpatrick believed that disclosure to the Court and the parties was appropriate, given that the Court-ordered deadlines for fact discovery and dispositive motions in Phase I already had expired, such that the parties could not simply agree between themselves to an extension of fact discovery.

- Kilpatrick has *not* "stalled" and, in fact, has been working diligently to track down all conceivable loose ends to ensure that its Phase I production is complete. Counsel for Iguana disingenuously stresses that "to date, no supplemental discovery, whatsoever, has been made" and claims to have conferred in good faith about the bases for his

motion, which, according to his brief, include Kilpatrick's failure to adhere to a "self imposed" production deadline that he equates to violation of a Court order. [3] He fails to disclose, however, that in correspondence at least as early as December 2, counsel for Kilpatrick explicitly discussed making supplemental production by January 6, 2010, so as to ensure that all possible sources of additional responsive materials had been identified and searched. He also fails to disclose that he has *not* (until his motion for sanctions) mentioned to counsel for the Kilpatrick defendants that he expected an earlier or a rolling production and has not ever inquired, by telephone or otherwise, about the status of the supplemental production. Indeed, his December 22 proposed language for a consent motion and order *included the January 6, 2010 deadline* for Kilpatrick's supplemental production.

- Ms. Cahoon's letter of December 1 truthfully asserted that Breakthrough Technologies was an entity "first brought to our attention" by Plaintiff's counsel's disclosure of a purported "Exclusive Military License" to Breakthrough Technologies. Ms. Cahoon's letter of February 11, 2008, in response to the Court's instruction to identify everyone to whom Kilpatrick Stockton had learned that copies of the December 2007 demand letter were sent, does not prove otherwise. That letter simply stated her understanding that Scott Bowen and D. Barrett Burge, among other individuals, had received copies of the letter. Ms. Cahoon's letter had nothing to do with Breakthrough Technologies and does *not*, as Iguana contends, show that copies of the December 2007 demand letter went to Breakthrough Technologies, *nor* does it

---

[3]     *See* Iguana's brief in support of its motions for sanctions, Dkt. No. 96, attachment #1; Dkt. No. 96, attachment # 2, at 10, 12.

US2008 1050232.3

show or even suggest that Ms. Cahoon was aware that Kilpatrick had an unreviewed
file relating to a past corporate matter for Breakthrough Technologies. Likewise, the
fact that Mr. Asman attached a copy of a purported "Exclusive Military License" to
Breakthrough Technologies to his proposed Second Amended Complaint filed on
January 9, 2009, does *not* show or even suggest that Ms. Cahoon knew that Kilpatrick
had old files relating to corporate work for Breakthrough Technologies.

- Ms. Cahoon did *not*, as Iguana suggests, send two inconsistent letters to the Court
concerning Kilpatrick's belated identification of the Breakthrough materials. Rather,
Ms. Cahoon's letter of November 30, 2009, was mistakenly faxed to the chambers of
Judge Lawson. On December 1, 2009, that letter was revised to correct the address
and to reference the mistaken facsimile. It was subsequently e-filed, as the Judge's
Clerk instructed, as Docket Entry 94. Neither of those letters intentionally
misrepresents the state of Kilpatrick's communications with Mr. Asman. Counsel for
Kilpatrick had indeed spoken with Mr. Asman several times over the course of
discovery and, in connection with the first extension sought by the parties, had
specifically indicated that Kilpatrick was making every effort to identify any and all
potentially responsive materials. Further, as counsel explained directly to Mr. Asman
on December 1, Ms. Cahoon was operating under the understanding that her
colleague, Ms. Decaire, would be speaking with Mr. Asman on November 30.

In short, Iguana's motion is heavy on overblown rhetoric, but light on the facts. Kilpatrick doubts that any additional discovery or analysis is truly necessary, given, as Kilpatrick has learned, that Iguana's counsel was already aware of the circumstances surrounding the Breakthrough license, made no arguments based on that in Iguana's opening brief in support of its summary judgment motion and made virtually no production of Breakthrough related documents as responsive to the Kilpatrick Defendants' Phase I discovery requests. However, as repeatedly conveyed to Iguana's counsel, the Kilpatrick Defendants have remained open to requesting that the Court enlarge Phase I of discovery, on reasonable terms, to permit Iguana to review and analyze the additional responsive materials that Kilpatrick ultimately produced on December 29, 2009, and to conduct whatever other discovery that Iguana deems appropriate, in light of those materials. As is apparent on review of the facts, however, while counsel regrets that the Breakthrough materials were not earlier identified, reviewed, and produced, neither the Kilpatrick Defendants nor their lawyers have engaged in conduct that warrants punitive sanctions.

A.     **Facts Concerning Kilpatrick's Identification, Review, and Production of the Breakthrough Materials.**

After Iguana LLC filed its motion for summary judgment on Phase I issues, Kilpatrick's litigation counsel learned that Kilpatrick might yet have an unreviewed file relating to corporate work performed by a former Kilpatrick attorney (who left the firm in January of 2007) for Breakthrough Technologies, an entity that appeared as licensee on an "Exclusive Military License" previously produced by Iguana. On the afternoon of November 17, 2009, counsel had a telephone conference with Richard Bennett, counsel for Mr. Scott Bowen. *See* Decl. of Candice Decaire, attached as Ex. E, at ¶ 4. Mr. Calkins, who

9

was in Atlanta at the time, participated in that conference. The discussion with Mr. Bowen's attorney touched on the topic of Breakthrough Technologies and caused Mr. Calkins to realize that litigation counsel were not aware of and had not reviewed the closed files relating to a former colleague's corporate work for Breakthrough Technologies in the late 1990s. *See* Decl. of Charles Calkins, attached as Ex. F, at ¶ 4; Decaire Decl., Ex. E, at ¶5. On his return to North Carolina, Mr. Calkins directed efforts to locate such files and, late on Friday November 20, verified that one file was stored at Kilpatrick's North Carolina offices. Calkins Decl., Ex. F, at ¶ 5; Decaire Decl., Ex. E, at ¶ 6. He then sent that file to Ms. Decaire and her colleagues in Kilpatrick's Atlanta offices. *Id.*

Based on an initial scan of the contents, counsel determined over the weekend of November 21-22, that (a) it appeared that the Breakthrough file should have been reviewed for responsive materials in connection with Phase I of discovery, relating to ownership and enforcement of license rights in Re '571, and (b) in light of the circumstances, prudence dictated follow-up searches of emails and other files relating to individuals identified in the Breakthrough file to determine whether there were additional potentially responsive materials relevant to Phase I of discovery. Decaire Decl., Ex. E, at ¶ 7. On the morning of November 25, litigation counsel called the former Kilpatrick attorney who had worked on the Breakthrough matter, Jeffrey Lawyer (now at Womble Carlyle), to get additional information and to find out whether there were additional Breakthrough-related materials. *Id.*, ¶ 8. Mr. Lawyer was not able to remember much, but did verify that he was not aware of any additional materials. *Id.*

Over the Thanksgiving weekend, November 26-29, Kilpatrick's litigation support personnel began processing the Breakthrough materials and loading them in Kilpatrick's

10

document handling program for review and possible production. Counsel and litigation support also began searching emails and firm records for other potentially responsive materials – using names of individuals who appeared in the Breakthrough file and casting a wide net, to ensure that no additional potentially responsive materials were overlooked. *Id.*, ¶ 9. On Monday, November 30, litigation support confirmed that they had been able to locate a disc with copies of Mr. Lawyer's emails regarding a variety of matters and began processing those materials for review as well. *Id.*, ¶ 10.

Kilpatrick completed its processing, review, and logging of the Breakthrough-related materials on December 29, 2009, and made a production that same day. *See* December 29 cover letter, attached as Ex. G; Decaire Decl., Ex. E, at ¶ 11. All told, Kilpatrick processed, searched, and reviewed over sixteen gigabytes of information (including over 10,000 total documents) to ensure that there were no further inadvertent omissions in its production for Phase I. *Id.* After all was said and done, there were only ten responsive, nonprivileged documents – four of which were emails between Plaintiff's counsel, Mr. Asman, and Jeff Lawyer, the former Kilpatrick attorney who performed the corporate work for Breakthrough Technologies. *Id.; see also* KS002998-3001, attached as Ex. H.

## B.    Facts Concerning Counsel's Decision to Inform the Court and the Parties.

The Court-ordered deadlines for fact discovery and filing of dispositive motions in Phase I had already expired (on October 23 and November 6 respectively) when counsel determined that the recently identified Breakthrough file might contain additional responsive materials. Accordingly, counsel believed that the most appropriate course of action was to inform both the Court and counsel for all parties that Kilpatrick had discovered additional potentially responsive documents. Notwithstanding that (a) counsel for Iguana apparently

11

already knew about the Breakthrough matter, and (b) Iguana's motion for summary judgment did not argue that anything about Breakthrough Technologies was relevant to Phase I issues, counsel believed that Iguana should be permitted an opportunity to review and analyze any additional responsive materials and should not be foreclosed from asserting any additional summary judgment arguments it believed appropriate, on the basis of any such responsive documents. *See* Letter of December 1, 2009, Dkt. No. 94; *see also* Decaire Decl., Ex. E, at ¶¶ 12, 13. Counsel intended to notify the Court on Monday, November 30, the same day that the response to Iguana's pending motion for summary judgment (which, again, did not raise any issue relating to Breakthrough Technologies) was due, but the letter was inadvertently faxed to the wrong chambers. *Id.,* at ¶¶ 14, 15. Accordingly, after calling the Judge's Clerk, counsel e-filed the letter, addressed to the correct chambers, on December 1, 2009. *Id.* at ¶¶ 15, 16; Dkt. No. 94.

    **C.**    **Facts Concerning Counsel's Communications with Plaintiff's Counsel, Mr. Asman, and Mr. Asman's Prior Knowledge of the Breakthrough Technologies Matter.**

Counsel for the Kilpatrick Defendants called Mr. Asman on December 1, 2009, and had a lengthy conversation. Decaire Decl., Ex. E, ¶ 18. After learning that Mr. Asman believed that the letter informing the Court and the parties of Kilpatrick's failure earlier to identify potentially responsive materials was somehow improper and prejudicial to Iguana, counsel attempted to convey that Kilpatrick's intention had been to take full responsibility for its error and to ensure that Iguana was not in any way prejudiced. *Id.,* ¶ 19. Mr. Asman persisted in asserting that counsel should have checked with him, rather the Court, despite the fact that Scheduling Order deadlines already had passed, such that the parties could not have "agreed around them." *Id.* Mr. Asman indicated that his client believed that Kilpatrick

US2008 1050232.3

had delayed revealing its error until after the Federal Rules' change in calculating deadlines somehow to prejudice Iguana. *Id.,* ¶ 20.

Early in the conversation, Mr. Asman also revealed that he was already aware of the Breakthrough Technologies matter. He was, in fact, able to access documents relating to the matter while on the telephone and related to counsel that he had been involved in Breakthrough Technologies' efforts to obtain licenses for patent rights for bednet technology. *Id.,* ¶ 21. Mr. Asman also shared his belief that the "Exclusive Military License" to Breakthrough Technologies was worthless, "like MMI's" license. *Id.* Although Kilpatrick believes that documents concerning Breakthrough Technologies' activities are responsive to the document requests served on Iguana in July of 2009, Iguana has not produced or logged any documents relating to Breakthrough Technologies, other than a copy of the "Exclusive Military License" and a patent that Mr. Asman emailed to Ms. Decaire during their conversation of December 1. *Id.,* ¶ 22; *see also* Ex. D (July 27, 2009 document requests to Iguana). Finally, Ms. Decaire and Mr. Asman also discussed the desirability of settling this case.

**D.    Facts Concerning Counsels' Attempts to Negotiate a Proposed Consent Motion to Provide Iguana with Additional Discovery Time.**

After attempting, in the extended telephone conversation of December 1, to address Mr. Asman's apparent belief that Kilpatrick sought to achieve some advantage for itself by disclosing to the Court its failure earlier to review potentially responsive documents, counsel discussed Kilpatrick's ongoing efforts to ensure complete disclosure of any and all responsive materials. *Id.,* ¶¶ 19, 20, 23. Counsel and Mr. Asman discussed the possibility of a consent order enlarging the discovery period and the time during which summary judgment

13

pleadings for Phase I would be due. *Id.*, ¶¶ 23, 25, Tab 2. Counsel sent Mr. Asman proposed language for a consent motion and order the next day, Tuesday, December 2, *explicitly indicating that the Kilpatrick Defendants proposed to complete their search, review, and any appropriate production by January 6, 2010. Id.*, ¶ 26, Tab 3. Counsel followed up also that afternoon with correspondence responding to Mr. Asman's insistence that the Kilpatrick Defendants should not be permitted any additional discovery. *Id.*, ¶ 27, Tab 4. Mr. Asman did not respond.

On Thursday, December 3, counsel for Kilpatrick Defendants inquired about whether Mr. Asman had any response, indicating also that she was out of the office ill. Mr. Asman sent a nice "tea and chicken soup" email, but did not provide any response about the consent motion and order. *Id.*, ¶ 28, Tab 5. On Monday, December 7, in the absence of any word from Mr. Asman, counsel for the Kilpatrick Defendants again inquired about the proposed consent motion and order. Mr. Asman did not respond. *Id.*, ¶ 29, Tab 6.

Early on the morning of December 22, Mr. Asman sent an email to all defense counsel, attaching his proposed revisions to the draft consent motion and order that counsel for Kilpatrick Defendants had provided to him on December 2, 2009. *Id.*, ¶ 30, Tab 7. Mr. Asman's proposal of December 22 included the provision that the Kilpatrick Defendants "anticipate that their production will be completed by January 6, 2010" and included in the proposed consent order that the Kilpatrick Defendants "shall complete their production of documents in the first phase of discovery . . . . on or before January 6, 2010." *Id.*, Tab 7 at 1 and 3. Counsel for Kilpatrick Defendants responded that same day, at 12:05 p.m., enclosing proposed changes and explaining them in a cover email. *Id.*, Tab 8.

14

Mr. Asman responded by email at 12:01 p.m. on December 23, effectively rescinding his previous proposal by stating "nonnegotiable" conditions – primarily that no party other than Iguana would be permitted to participate in additional discovery (with the possible exception of expert discovery) and that the Kilpatrick Defendants must agree to pay as-yet undetermined costs and fees that he believed to be attributable to their delay earlier to produce the materials at issue. *Id.*, ¶ 31, Tab 9. He demanded unconditional agreement within three hours or "all negotiations are expressly withdrawn." *Id.* Counsel for the Kilpatrick Defendants attempted again to explain the reasoning behind the proposed language in an email sent at 1:47 p.m. on December 23. *Id.*, ¶ 32, Tab 10. Mr. Asman again responded with his nonnegotiable conditions and threatened motion. *Id.*, Tabs 11, 12. Counsel then reiterated that the Kilpatrick Defendants were more than willing to agree to seek an extension of time to accommodate Iguana's concerns, in light of forthcoming production of responsive materials associated with the Breakthrough file. *Id.*, ¶ 33, Tab 13.

Mr. Asman filed the present "Motion for Sanctions" on December 24, 2009. (Dkt. No. 96.) While, as detailed above, he had conferred with Kilpatrick's counsel about the terms of a consent motion and order for further discovery (specifically, his demand for one-sided discovery and payment of his costs and fees), he did not discuss the timing of Kilpatrick's supplemental production. *Id.*, ¶ 34. He has known since at least December 2 that Kilpatrick proposed to complete whatever supplemental production was appropriate by January 6, 2010, to allow enough time to ensure that every conceivable source of potentially responsive information had been identified and searched. *Id.*, ¶ 26. He did not communicate

15

to Kilpatrick's counsel that he expected a production before January 6 and did not once contact Kilpatrick's counsel to inquire about the status of that production.[4] *Id.,* ¶ 34.

## III.    IGUANA'S MOTION FOR SANCTIONS IS UNWARRANTED

### A.    The Circumstances Do Not Demonstrate Discovery Abuse or Other Improper Conduct by Any of the Kilpatrick Defendants.

As set out in Section II above, Kilpatrick has not attempted to conceal discoverable materials, nor to delay this matter.  Indeed, once Kilpatrick ascertained that it had responsive materials relating to Breakthrough Technologies that should earlier have been reviewed for production, Kilpatrick took steps (a) to collect and review all such materials and any conceivably related electronic and/or paper files, (b) to inform the Court and the parties of its belated identification of materials that Kilpatrick believed should earlier have been reviewed and produced, and (c) to inform the Court and parties that an enlargement of Phase I deadlines to avoid any potential prejudice to Iguana might be appropriate.  Kilpatrick made a mistake in failing earlier to identify the files relating to its former attorney's corporate services for Breakthrough Technologies and has endeavored to do everything in its power to address that mistake, fully and fairly to disclose its error, and to work with Iguana to ameliorate any resulting prejudice.

In the process of attempting to do the right thing concerning the previously overlooked Breakthrough Technologies materials, Kilpatrick's litigation counsel has learned that counsel for Iguana was already thoroughly familiar with events surrounding Breakthrough Technologies.    Counsel for Iguana has taken the position that the

---

[4]      If Mr. Asman had inquired, Kilpatrick could and would have made a rolling production, providing documents as they became available.  As it was, Kilpatrick was able to complete its comprehensive review and make a final production in connection with Phase I discovery on December 29, 2009.

Breakthrough-related materials in his possession are not relevant to Phase I discovery requests. Decaire Decl., Ex. E, ¶ 22, Tab 14.

Iguana has responded to Kilpatrick's good faith disclosures and representations by (a) first accusing counsel of conspiring to achieve some advantage by telling the Court about Kilpatrick's failure earlier to identify the Breakthrough file, (b) ignoring Kilpatrick's proposed consent motion for over two weeks, (c) then proposing "nonnegotiable," entirely one-sided discovery and demanding that Kilpatrick agree to pay speculative fees and costs "caused" by Kilpatrick's belated production, with a three hour deadline for agreement, on pain of the present motion for sanctions, and (d) finally, filing the present motion, seeking Rule 37 sanctions for violation of a "self imposed deadline" that does not exist. *See* sections II. C-D above.

The totality of the circumstances surrounding Kilpatrick's failure earlier to identify, review, and produce the materials at issue does not justify Rule 37 sanctions. Neither the dismissal nor the payment of costs and fees sought by Iguana are warranted, especially in light of Iguana's unreasonable conduct.

**B.      There is No Factual or Legal Basis for Imposing Sanctions Under Rule 37.**

Pursuant to Rule 37 and its inherent powers, the Court can, of course, impose sanctions or measures it deems appropriate. Sanctions pursuant to Rule 37, however, are appropriately reserved for discovery *abuses* – instances in which a party has violated a discovery order, such as by refusing to provide discoverable materials or by failing to comply with an Order on a motion to compel. *See* Fed. R. Civ. P. 37 (providing for sanctions if a motion to compel disclosure is granted, for failure to comply with court-ordered discovery at 37(a), for failure to supplement at 37(b), failure to admit, attend

17

depositions, answer interrogatories, or respond to requests for inspection at 37(d), failure to provide electronically stored information at 37(e), and failure to participate in framing a discovery plan at 37(f)); *see also, e.g., Hessenthaler v. Advantage Counseling Servs., Inc.*, No. 3:07-CV-107(CDL), 2009 WL 111636 (M.D. Ga., Jan. 15, 2009).

Rule 37 sanctions are intended to punish discovery derelictions and to cure any attendant prejudice -- protecting the discovery process by (a) compelling the discovery at issue, (b) penalizing the offending party so as to deter similar conduct, and (c) mandating compensation for any expenses caused by discovery abuses. *See, e.g., Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985); *see also Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999) (Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and ensure the integrity of the discovery process). The sanction of dismissal, in particular, "is justified only in extreme circumstances and as a last resort." *Wouters v. Martin County, Fla.*, 9 F.3d 924, 933 (11th Cir. 1993) (listing citations). Indeed, the Eleventh Circuit has held that dismissal of an action is an appropriate sanction only where a party has displayed "willfully contemptuous conduct" and willfully or in bad faith failed to obey a discovery order. *Id.* at 934; *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993) ("Dismissal is not justified under Rule 37(b) if a party's failure to comply with a discovery order was caused by simple negligence . . ."); *see also OFS Fitel, LLC v. Epstein, Becker & Green P.C.*, 549 F.3d 1344, 1366 (11th Cir. 2008) (severe sanction of dismissal appropriate only with a showing of bad faith, willful delay, or flagrant disregard for the district court's discovery orders).

None of the Kilpatrick Defendants has refused to comply with a Court order on a motion to compel, nor refused to comply with court-ordered discovery. None of the

18

Kilpatrick Defendants has failed to supplement, admit, attend depositions, or respond to requests for inspection. None has failed to provide electronically stored information and none has refused to participate in framing a discovery plan. Indeed, as outlined in sections II. A-B above, the Kilpatrick Defendants have taken affirmative steps to ensure that their unintentional earlier omission of the Breakthrough-associated materials[5] was made known to the Court and the parties and addressed in a timely and thorough manner. Kilpatrick's conduct has been the antithesis of the sort of "willfully contemptuous" disregard or bad faith conduct that would justify sanctions. As soon as Kilpatrick realized its mistake, Kilpatrick took steps to address it. Kilpatrick fully disclosed its error and has attempted to ensure that Iguana is not prejudiced. *See generally,* section II. above.

Given all of the circumstances, including Iguana's previous knowledge of the information contained in the documents at issue (if not the documents themselves) and Mr. Asman's assertion that the unproduced Breakthrough materials in his possession are not relevant to Phase I discovery, Kilpatrick does not believe that its belated production should cause any delay or create a need for any additional discovery by Iguana. Because its counsel did fail timely to identify and review potentially responsive materials, however, Kilpatrick has tried to accommodate Iguana's concerns.

### C.    Conclusion.

While a modest enlargement of discovery to permit Iguana to review and analyze the 10 additional responsive documents that were produced on December 29, 2009, and to determine whether to seek any follow-up discovery may be appropriate, neither the sanctions

---

[5]     Review of all of the Breakthrough-associated materials ultimately resulted in production of ten additional documents on December 29, four of which were correspondence with Plaintiff's counsel and thus presumably already known to Iguana. *See* Ex. H.

19

that Iguana presently seeks nor Iguana's nonnegotiable demands of December 23rd are warranted. Accordingly, Kilpatrick respectfully requests that the Court consider the motion and order that Kilpatrick proposed to Iguana (attached to the Declaration of Candice Decaire, Ex. E hereto, at Tab 8), enter that order, and deny Iguana's motion for sanctions.

Respectfully submitted, this 31st day of December, 2009.


KILPATRICK STOCKTON LLP
Suite 2800, 1100 Peachtree Street
Atlanta, Georgia  30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
E-mail: cdecaire@kilpatrickstockton.com

s/ Candice C. Decaire
Susan A. Cahoon
Georgia Bar No. 102000
Candice C. Decaire
Georgia Bar No. 209815

Attorneys for Defendants Paul E. Lanham,
Charles Calkins and Kilpatrick Stockton LLP

20

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2009, I electronically filed the foregoing

**RESPONSE TO MOTION FOR SANCTIONS** with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to the following:

> Sanford J. Asman, Esq.
> Hugh B. McNatt, Esq.
> Joshua T. Archer, Esq.
> David A. Lester, Esq.
> William L. Tucker, Esq.

and by U.S. Mail to:

> Paul E. Lanham
> 11 Stanton Lane
> Ripley, WV 25271

**KILPATRICK STOCKTON LLP**
Suite 2800, 1100 Peachtree Street
Atlanta, Georgia  30309-4530
Telephone:  (404) 815-6500
Fax:  (404) 815- 6555
E-mail:  cdecaire@kilpatrickstockton.com

s/ Candice C. Decaire
Susan A. Cahoon
Georgia Bar No. 102000
Candice C. Decaire
Georgia Bar No. 209815

Attorneys for Defendants Paul E. Lanham,
Charles Calkins and Kilpatrick Stockton LLP

US2008 1050232.3