IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **IGUANA, LLC**<br><br>    Plaintiff,<br><br>    vs.<br><br>**PAUL E. LANHAM**, an individual;<br>**RANDALL J. LANHAM**, an individual;<br>**CHARLES W. CALKINS**, an individual;<br>**KILPATRICK STOCKTON LLP**, a limited liability partnership;<br>**H. DAVID COBB**, an individual;<br>**FEDERAL MARKETING SERVICE CORPORATION**, an Alabama corporation; and<br>**MONTGOMERY MARKETING, INC.**, an Alabama corporation;<br><br>    Defendants. | Civil Action No.<br><br>7:08-CV-00009-CDL |

**PLAINTIFF IGUANA, LLC'S BRIEF IN SUPPORT OF IGUANA, LLC'S
MOTION FOR SANCTIONS AND
IN REPLY TO RESPONSE OF THE LANHAM DEFENDANTS**

## Introduction

The Response [97] filed by the Lanham Defendants[1] demonstrates an utter disregard for the fact that the Lanham Defendants are parties to the present action, whereas, ***Defendant*** Kilpatrick Stockton LLP elected to ***also*** wear the hat of counsel ("the Kilpatrick Law Firm"), a decision which it was entitled to make despite the fact that it was a decision whose wisdom has

---

[1] "The Lanham Defendants" is a collective term which includes Defendants Paul E. Lanham, Kilpatrick Stockton LLP, and Charles W. Calkins, Esq

– 1 –

been repeatedly questioned.[2]

In an effort to maintain the "line" between the dual capacity of party and counsel which *Defendant* Kilpatrick Stockton and *Defendant* Calkins (a partner in *Defendant* Kilpatrick Stockton) elected to pursue, Iguana's discovery propounded upon Defendant Paul E. Lanham was served upon his counsel, the Kilpatrick Law Firm (*See,* Exhibit 1), while Iguana's discovery propounded upon *Defendant* Kilpatrick Stockton and *Defendant* Calkins was served upon their counsel, William L. Tucker, Esq. (*See,* Exhibit 2).  While the decision to act as their own attorney was a choice that *Defendant* Kilpatrick Stockton and *Defendant* Calkins were entitled to make what the Kilpatrick Law Firm was *not* entitled to do was to imply that the discovery propounded upon *Defendant* Kilpatrick Stockton and *Defendant* Calkins through Mr. Tucker (*See,* Exhibit 2) did not require compliance by *Defendant* Kilpatrick Stockton and *Defendant* Calkins.

The Response [97] submitted by the Lanham Defendants further demonstrates why the sanctions requested by Iguana must be granted, as it (a) acknowledges the facts and wrongs asserted by Iguana; (b) fails to accept responsibility for the wrongs committed while pointing the "finger" at Iguana; and (c) seeks to take the action further "off track", causing additional delays and expenses to Iguana, based on the wrongs admittedly committed by *Defendant* Kilpatrick Stockton and *Defendant* Calkins, based on arguments made by the Kilpatrick Law Firm which are inconsistent with either the *admitted* facts or the relevant law.

### Acknowledgment of the Facts and Wrongs Asserted by Iguana

A.     **Ms. Cahoon's faxed letter to Senior Judge Lawson and the eFiled[3] Letter [94]**

      1.     **Statements as to Notification of Undersigned**

---

[2] *See, Faretta v. California,* 422 U.S. 806, 851 (1975); *Kay v. Ehrler,* 499 U.S. 432. 437-438 (1991); *United States v. Talley,* 315 Fed. Appx. 134, 138, 2008 U.S. App. LEXIS 21764 (11th Cir. 2008).

Iguana's Motion [96] stated that both the letter faxed to Judge Lawson's chamber (*See*, [96-8], corresponding to Exhibit 6 of the Motion [96]) and the eFiled Letter [94] wrongly claimed that neither Ms. Cahoon, nor anyone else (either at the Kilpatrick Law Firm or at Mr. Tucker's law firm[4]), had contacted undersigned prior to their having been faxed and eFiled, as each document (wrongly) asserted.

The Response [97] admits those facts.  Ms. Decaire's Declaration [97-6] (Response [97] at Exhibit E), affirms that she drafted the letter which was faxed to Senior Judge Lawson's chambers [96-8]; that she "corrected" and eFiled Letter [94]; that she "neglected" to call undersigned as (wrongly) stated in both documents (*See,* Decaire Declaration [97-6], Exhibit E, at pp. 6-7, ¶¶ 13-17, and Exhibit E, at Tab 1, [97-6] at p. 15); and that she called undersigned only *after* undersigned sent an email to all counsel (*See,* Declaration [97-6] at Exhibit E, at Tab 1, [97-6] at p. 15).

### 2.     Statements as to "Breakthrough Technologies"

Iguana's Motion [96] stated that both Ms. Cahoon's incorrectly faxed letter to Judge Lawson's chamber (*See*, [96-8], Exhibit 6 of the Motion [96]) and the eFiled follow-up Letter [94] wrongly claimed, "Breakthrough Technologies, LLC" was "… an entity first brought to our attention by plaintiff's counsel, who attached to his proposed Second Amended Complaint a document purporting to grant 'Breakthrough Technologies, LLC' a license to rights in the patent-at-suit…".

Iguana's Motion [96] states that the Lanham Defendants knew about Breakthrough Technologies prior to the time that Ms. Cahoon wrote her letter on February 11, 2008 responsive

---

[3] As used herein "eFiled" means filed with the Court using the CM/ECF system.
[4] While the Discovery propounded on Defendant Lanham was served on Kilpatrick Stockton (*See,* Exhibit 1), the Discovery propounded on Defendant Kilpatrick Stockton and on Defendant Charles Calkins was served on Mr. Tucker (*See,* Exhibit 2).

to Judge Lawson's Order[5] that the Lanham Defendants (*See,* [96-6] at 2) and well before Ms. Cahoon eFiled her Letter [94] as "Attorney for Defendants". It was not Iguana's obligation to bring "Breakthrough Technologies" to the attention of the Lanham Defendants. It was Mr. Tucker's obligation, as attorney for the Lanham Defendants, and Ms. Cahoon's obligation, as co-counsel, to make inquiry into the underlying facts and issues, and it was the obligation of each of the Lanham Defendants to comply with the discovery propounded upon them. Is one to truly believe that Ms. Cahoon, an experienced litigator and counsel to the Kilpatrick Law Firm, did not make inquiry to her clients prior to writing her letter of February 11, 2008 as to the identification of each of the named recipients of the Infringement Letter, or that she did not make inquiry as to their relationship to the matter or as to why copies of the Infringement Letter were sent to each of them? In any event, it was incumbent upon the Kilpatrick Law Firm to respond to discovery served on it with respect to its client Paul E. Lanham, and it was incumbent upon Mr. Tucker. to respond to discovery served on him with respect to his clients, **Defendant** Kilpatrick Stockton and **Defendant** Charles W. Calkins, Esq. While the Kilpatrick Law Firm may, well, be co-counsel to Mr. Tucker in representing **Defendant** Kilpatrick Stockton and **Defendant** Calkins, the fact that Kilpatrick Stockton LLP chose to wear both hats does not mean that **Defendant** Kilpatrick Stockton and **Defendant** Calkins were entitled to be oblivious to facts admittedly known to them or that they had no independent duty to disclose documents admittedly in their files.

Again, Ms. Decaire's own Declaration confirmed that **Defendant** Kilpatrick Stockton had represented Breakthrough Technologies in the 1990's (*See,* Decaire Declaration [97-6], Exhibit

---

[5] The term "responsive to", rather than "in compliance with" was intentionally used, in that Judge Lawson's Order required the names of the persons to whom the Infringement Letter was sent to be "… ***delivered*** to the plaintiff within ten days." whereas, Ms. Cahoon's Letter was first mailed on the eleventh day following the Order, a seemingly innocent delay, but an ominous portend of the delays to come.

E, at pp. 2-5, ¶¶ 5-12), when the "Breakthrough License" was entered, and it further confirmed that *Defendant* Kilpatrick Stockton had undisclosed files and documents relating to Breakthrough Technologies.

### 3. Statements As To The Kilpatrick Law Firm's "Self-Imposed Timeline" And Representations To Counsel And The Court

Iguana's Motion [96] stated that Ms. Cahoon's Letter [94] included a self-imposed timeline which was unmet.

The Letter [94] stated, "… we are working diligently to track down every possible loose end and anticipate making a supplemental production this week." *i.e.,* the week of December 1, 2009.

On December 31, 2009, *a month after* Ms. Cahoon faxed her letter to Senior Judge Lawson (on November 30, 2009) and *a week after* Iguana filed its Motion for Sanctions [96], undersigned received a FedEx package accompanied by a cover letter, a true copy of which is annexed as Exhibit 3 from Kristine E. Teilhaber, IP Litigation Paralegal, at the Kilpatrick Law Firm stating, "On behalf of Candice Decaire, enclosed find hard copies of the documents which have been marked KS002896 – KS003156." In addition to the "Bates" numbered documents, the FedEx package included two "Privilege Logs" (*See,* attached Exhibits 4 and 5).

Presumably those 261 pages of Bates Numbered documents and the accompanying Privilege Logs correspond to the "260 pages and a privilege log" referenced by Ms. Decaire in her Declaration (*See,* Decaire Declaration [97-6] at Exhibit E, p. 4, ¶ 11)[6].

### 4. Statements as to the Kilpatrick Law Firm's "Diligent Work" and Representations of "Good Faith" to Counsel and the Court

Iguana's Motion [96] stated that Ms. Cahoon's Letter included false statements of diligent work to "track down every possible loose end".

In its Response [97] the Kilpatrick Law Firm set out the timing and manner in which the Kilpatrick Law Firm addressed its obligation to track down the loose ends created by the failure of *Defendant* Kilpatrick Stockton and *Defendant* Calkins to have made full and timely disclosures (*See,* Decaire Declaration [97-6] at Exhibit E, p. 4, ¶¶ 3-11).

While one can only imagine the "Edgar Bergen / Charlie McCarthy" scene which accompanied the diligent work of the Kilpatrick Law Firm, on the one hand, impeded by the reluctance of *Defendant* Kilpatrick Stockton and *Defendant* Calkins to disclose the documents which were requested of Mr. Tucker (*See,* Exhibit 2), on the other, what we now know is that on March 6, 1999 Scott Bowen (an admitted client of *Defendant* Kilpatrick Stockton) apparently wrote a letter to Mr. Jeff Lawyer of *Defendant* Kilpatrick Stockton. We know that because the Lanham Defendants produced document KS003002, a true copy of which is attached as Exhibit 6. Unfortunately, that is all we know, as everything on the page, but for the letterhead of Bowen Town & Country Furniture Co., Mr. Lawyer's address, Mr. Bowen's name and signature, and the "Bates" No. KS003002 was blacked out.

On the other hand, KS003002 was significantly *more* informative than the 53 pages of "documents" produced as KS003045-KS003097, true copies of which are attached as Exhibit 7, as *everything* on each of those pages (other than the "Bates" numbers) was blacked out.

**Failure to Accept Responsibility While "Pointing the Finger" At Iguana**

1. **Breakthrough Was A Client Of Undersigned Counsel, But Undersigned Counsel Was Not The Subject Of Discovery Requests**

Even though the Lanham Defendants admitted their failure to have fully and timely complied with their discovery obligations, they, nevertheless, refused to accept responsibility for

---

[6] There were actually 261 pages produced, and two documents, each entitled "Privilege Log" (*See,* Exhibits 4 and 5).

their wrongs, and, instead, "pointed their finger" at Iguana. In particular, they filed a Response [97] in which they asserted that much of what they admittedly failed to disclose was in the files of undersigned counsel. In doing so, they are clearly (and conveniently) "forgetting" that they chose to wear two hats, whereas undersigned counsel is merely an attorney and not a party to the action. Undersigned counsel represented Breakthrough in connection with the filing and prosecution of a patent application. As such, undersigned was privy to documents relating to Breakthrough; undersigned knew of Breakthrough's activities in the bednet and tent businesses; and undersigned knew who Scott Bowen and D. Barrett Burge were when he received Ms. Cahoon's letter of February 11, 2008. Those facts relate to *undersigned counsel*, not to Iguana. Accordingly, when discovery was propounded upon Iguana, such discovery did not constitute a "search warrant" to go through the files of every client who undersigned ever represented as an attorney. With respect, though, to *Defendant* Kilpatrick Stockton, they had the same obligations as any other defendant, and they failed to comply with those obligations. Nevertheless, the Response [97] of the Lanham Defendants seems to equate the legal obligations of undersigned counsel to the legal obligations of the Lanham Defendants.

     **2.**     **Admissibility And Relevance Of The Breakthrough Agreement**

Next, the Lanham Defendants in an apparent "no harm no foul" approach to their discovery obligations, set out that undersigned, and Iguana, were aware of the Breakthrough License, even without their having produced it in discovery. They then went on to state that since Iguana was aware of the Breakthrough License, and did not refer to it in Iguana's Motion for Summary Judgment, Iguana "must have" believed it was not relevant.

Again, the Lanham Defendants missed the issue. In fact, the Breakthrough License, along with other documents which were referenced in Iguana's Motion for Summary Judgment [89] were *all* hearsay if in the hands of Iguana alone. However, the documents which were cited

in Iguana's Motion for Summary Judgment [89] were limited to the documents actually produced by the Lanham Defendants from their own files and business records, and they thereby constituted admissible evidence, as either business records or admissions. Thus, they showed that the Lanham Defendants were aware of numerous licenses, and assignments, executed by both McLeese and others in their alleged "chain of title", thereby making those documents available as admissions and as relevant, admissible business records. On the other hand, the same document (*i.e.,* the Breakthrough License), if produced by Iguana, might well not be admissible as evidence without other authentication.

### Efforts To Take The Matter Further Off Track

1. **References To "The Patriot Suit"**

The Response [97] of the Lanham Defendants includes page after page of irrelevant references to another suit ("the Patriot Suit") in which Iguana is a party. How the Patriot Suit can be related to the failure of the Lanham Defendants to have complied with their discovery obligations in the present action defies logic or comprehension. To the extent that the Lanham Defendants believe that the damages claimed from them in the present action were somehow related to the actions of the defendant in the Patriot Suit, they have had more than ample opportunity to implead third parties, which they, notably, failed to do. Consequently, their comments relating to the Patriot Suit must be viewed as what they are, yet another attempt to pass the blame while refusing to accept the consequences of their own failure to provide the discovery to which Iguana was entitled, while seeking to take the present action further "off track", while causing additional delays and expenses to Iguana.

2. **Ongoing Failure To Comply With Their Discovery Obligations**

One need only glance at Exhibits 6 and 7 herein to see how seriously the Lanham

Defendants are taking their discovery obligations. Together the two exhibits account for 54 pages of *nothing* but Bates numbers.

In addition, the Lanham Defendants produced two "Privilege Logs" (*See,* Exhibits 4 and 5) in which they are now claiming to have withheld numerous pages of "privileged documents". In that such claim of privilege was never made during Phase I of discovery, such claimed "privilege" has long been waived, whereby a specific claim for the withheld documents was made to Ms. Cahoon (*See,* Exhibit 8). Notwithstanding such demand for production, nothing has been produced.

## Conclusion

Before concluding the present Reply, it is instructive to recall the prophetic words of Senior Judge Lawson, from the TRO hearing held on January 31, 2008:

> … it seems to me that there is an adequate remedy of law, and that remedy is damages, possible damages against Lanham and those who are in privity with him and possible damages against Kilpatrick Stockton. And I don't say that, again, in any suggestion that Kilpatrick Stockton has acted improperly, but as I've indicated by my comments, I do not understand some of the things that Kilpatrick Stockton did not do, and it's not -- there's no stretch of the imagination to say that a jury might not find that those things were not only done improperly, but possibly willfully.
>
> As an aside, if you will allow me a personal moment, this is just a classic illustration of the problems that exist in the law practice today. No one would possibly believe that Mr. Calkins did not know about you, Mr. Asman, and no one with any experience in the law practice understands why he did not pick up the electric telephone and at least call you, and say, are you still the lawyer for this man? That would be – I mean, lawyers today just have taken leave of common sense. It's unfortunate, but that's -- I see it every day. I mean, here is an obvious right thing to do, and just by God, we're not going to do it just because we don't have to. (Transcript of Hearing of January 31, 2008 at pp. 76-77, a copy of which is annexed to the Motion [96] as Exhibit 2).

Just as it was inconceivable for Senior Judge Lawson to understand some of the things that Defendant Kilpatrick Stockton and Defendant Calkins did which brought on the present

action, and just as he noted that no one with any experience in the practice of law would have done some of the things that they did, it remains virtually impossible for anyone with any experience to look at how Defendant Kilpatrick Stockton and Defendant Calkins, along with their counsel, did not make the same inquiry into their own affairs and records that they would assuredly have expected clients to have made in response to discovery requests.

For one to believe that Ms. Cahoon did not know of Mr. Bowen's and Mr. Burges' relationship to Breakthrough at the time she authored the letter of February 8, 2008, let alone the later events, including the appearance of the Breakthrough License in Iguana's Second Amended Complaint, etc., defies any semblance of credibility. Ms. Cahoon is an experienced litigator and counsel to the Kilpatrick Law Firm, yet she is claiming that she was unaware of why Mr. Calkins sent copies of the Infringement Letter to them.

What then of Mr. Calkins, or Mr. Lanham? Is one to believe that they merely selected names at random to be the recipients of the Infringement Letter? Is one to believe that at least two such recipients were officers of Breakthrough, yet they were somehow unaware of Breakthrough's existence? As stated by Senior Judge Lawson, "No one would possibly believe that…"

Next, upon learning of the failure of the Lanham Defendants to comply with their discovery obligations Plaintiff Iguana made good faith efforts, as required by LR 37, to negotiate a Consent Motion and Consent Order to be proposed to the Court in order to avoid the present motion. While undersigned acknowledges that they *asked for* more time than their own self-imposed deadline, plaintiff did not agree to anything beyond the week which they had, themselves, proposed in Ms. Cahoon's own letter [94].

Finally, one must, again, look to the Declaration of Ms. Decaire (Response [97] at Exhibit E [97-6]) together with Exhibits 4-7 herein to determine the sincerity of the Lanham Defendants

to now comply with their discovery obligations.  Ms. Decaire affirmed (Decaire Declaration [97-6] at ¶¶[3-11) that the Kilpatrick Law Firm examined over "76 gigabytes" (that would be more than $76 \times 1,024 \times 1,024 \times 1,024 = 81,604,378,624$ characters of electronic data, or the electronic equivalent of more than 40 million pages of double spaced typewritten pages) along with "over 26,000 pages" of documents, which were then followed up with additional searches of "over sixteen gigabytes of information, including 10,800 separate documents" along with "… a disc of Mr. Lawyer's emails…"  One might reasonably believe, that at least one single byte of those 92 gigabytes of data would have been subject to the electronic records discovery made of the Lanham Defendants (*See,* Exhibits 1 and 2), yet not a single byte of electronic data was produced.  And, what of those 36,800 documents?  One must merely look at Exhibits 6 and 7 to see the sincerity of the Lanham Defendants.

  Thus, while Plaintiff recognizes that dismissal of Defendant Lanham's Counterclaim is a drastic remedy, and one which should be imposed sparingly, for the reasons expressed in Iguana's Motion for Sanctions [96] it is required in a case such as this in which experience lawyers are the defendants, and in which they are using their well honed legal skills to subvert their very presence in the courtroom and make a mockery of their obligations as defendants.

              Respectfully submitted,

Dated: __January 14, 2010__    By: _s/ Sanford J. Asman_____
              Sanford J. Asman
              Georgia Bar No. 026118
              Attorney for Plaintiff Iguana, LLC
              Law Office of Sanford J. Asman
              570 Vinington Court
              Atlanta, Georgia  30350
              Phone : (770) 391-0215
              Fax  : (770) 668-9144
              E-mail : sandy@asman.com

## CERTIFICATE OF SERVICE

It is certified that on the date set forth below:

**PLAINTIFF IGUANA, LLC'S BRIEF IN SUPPORT OF IGUANA, LLC'S MOTION FOR SANCTIONS AND IN REPLY TO RESPONSE OF THE LANHAM DEFENDANTS**

was served using the CM/ECF system on the date set forth below.

Dated: __January 14, 2010__                By: _s/ Sanford J. Asman_____
                                                        Sanford J. Asman
                                                        Georgia Bar No. 026118
                                                        Attorney for Plaintiff Iguana, LLC
                                                        Law Office of Sanford J. Asman
                                                        570 Vinington Court
                                                        Atlanta, Georgia  30350
                                                        Phone   :   (770) 391-0215
                                                        Fax       :   (770) 668-9144
                                                        E-mail  :   sandy@asman.com