IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| IGUANA, LLC, | * | |
| Plaintiff, | * | |
| vs. | * | CASE NO. 7:08-CV-09 (CDL) |
| PAUL E. LANHAM, an individual; CHARLES W. CALKINS, an individual; KILPATRICK STOCKTON, LLP, a limited liability partnership; H. DAVID COBB, an individual; FEDERAL MARKETING SERVICE CORPORATION, an Alabama corporation; MONTGOMERY MARKETING, INC., an Alabama corporation; RANDALL J. LANHAM, an individual, | * * * * * * | |
| Defendants. | * | |
| | * | |

O R D E R

This action arises from accusations made by Defendants in a letter to Plaintiff's suppliers that Plaintiff willfully infringed upon a patent described as the McLeese Multi-Pole Reissue Patent, U.S. Patent No. Re 35,571 ("U.S. Re '571"). As a result of that letter, Plaintiff alleges that it suffered monetary harm for which it seeks damages based upon defamation, tortious interference, and common law conspiracy. Defendant Paul E. Lanham ("Lanham") alleges in his counterclaim that he acquired rights to U.S. Re '571, including all rights to recover for infringement, and that Plaintiff infringed upon U.S. Re '571.

Plaintiff contends that Lanham's counterclaim for patent infringement fails as a matter of law, and has filed the presently pending Motion for Summary Judgment as to Ownership and Enforceability of U.S. Re 35,571 by Paul E. Lanham (ECF No. 111). Plaintiff also contends that counsel for Defendants Paul Lanham, Charles Calkins, and Kilpatrick Stockton, LLP (the "Lanham Defendants"), acted improperly in connection with Lanham's patent infringement counterclaim, and has filed the presently pending Motion for Sanctions (ECF No. 119).

For the following reasons, the Court finds that genuine issues of material fact exist to be tried as to Lanham's counterclaim for patent infringement, and therefore, the Court denies Plaintiff's motion for summary judgment. The Court further finds that counsel for the Lanham Defendants did not act objectively unreasonable or in bad faith in pursuing Lanham's counterclaim for patent infringement, and therefore, the Court denies Plaintiff's sanctions motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In determining whether a *genuine* issue of *material* fact exists to defeat a motion for summary judgment, the evidence is

viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

The facts, viewed in the light most favorable to the non-moving parties in this case, the Lanham Defendants, are as follows.

### I. The Chain of Title of License Rights to U.S. Patent No. 4,858,634 from Edward McLeese to Defendant Paul Lanham

The patent at issue in this case, U.S. Re '571, was a reissue patent based on original U.S. Patent No. 4,858,634 (the "'634 Patent"). The '634 Patent was issued to Edward S. McLeese ("McLeese") for his "SELF ERECTING STRUCTURE." Defs. Kilpatrick Stockton, LLP, Charles W. Calkins, & Paul Lanham's Resp. to Pl.'s Mot. for Summ. J., ECF No. 114 [hereinafter Lanham Defs.' Resp.] Ex. A., U.S. Patent No. 4,858,634 (filed July 18, 1988), ECF No. 114-2. Following the issuance of the '634 Patent, McLeese engaged in licensing activities pursuant to which licenses were issued to various entities.

Some time before 1992, McLeese entered into licensing agreements with Magic Dream, Inc., Tents, Etc., Inc., and Macco International, Inc., three companies of which McLeese was the president (the "McLeese Companies"). Pl.'s Mot. for Summ. J., ECF No. 111 [hereinafter Pl.'s Mot.] Ex. 6, Def. Paul E. Lanham's Supplemental Resps. to Pl.'s First Interrogs. 2, ECF No. 111-18 [hereinafter Def. Paul Lanham's Supplemental Resps.]; see Pl.'s Mot. Ex. 7, Licensing Agreement ¶ 2, May 15, 1992, ECF No. 111-19 (warranting that McLeese had "full authority as the Present of Tents, Etc., Incorporated, Macco International, Inc., and Magic Dream Inc., to act by and on behalf of those Corporations"); see also Lanham Defs.' Resp. Ex. C, State of La. Secretary of State Bus. Corp. Printouts, ECF No. 114-4 (identifying McLeese as a "Director" of the McLeese Companies).

On May 15, 1992, McLeese, acting for the McLeese Companies, entered into a licensing agreement with Springbok, Inc. ("Springbok"), granting Springbok limited rights to manufacture and sell products covered by the '634 Patent and/or "protected by any re-issuance of such patent." Pl.'s Mot. Ex. 7, Licensing Agreement at LANHAM000241 ¶ 4.

On April 27, 1993, McLeese and Springbok executed another license agreement, granting Springbok exclusive worldwide rights for the life of the '634 Patent "to utilize the Patent and any and all rights therein" in connection with "merchandise based upon or derived

4

from the Patent." Pl.'s Mot. Ex. 8, License Agreement at LANHAM000221-22, Apr. 27, 1993, ECF No. 111-20.

Finally, on January 5, 1995, McLeese and the McLeese Companies entered into an Exclusive License Agreement with Springbok, which granted Springbok worldwide exclusive rights in the '634 Patent, including "all divisions, continuations, reissues, extensions thereof and the right to sublicense for the Life of the Patent[]." Pl.'s Mot. Ex. 11, Exclusive License Agreement at LANHAM000184 ¶ 12, Jan. 5, 1995, ECF No. 111-23. The '634 Patent was reissued as U.S. Re '571 on July 29, 1997. Lanham Defs.' Resp. Ex. B., U.S. Patent No. Re. 35,571 (filed Feb. 3, 1995), ECF No. 114-3.

In October of 1997, Springbok and all of its shares were acquired by Natural Born Carvers, Inc. ("NBC"), a Colorado corporation. Lanham Defs.' Resp. Ex. E, Acquisition Agreement: Acquisition of Springbok, Incorporated by Natural Born Carvers, Inc., Oct. 15, 1997, ECF No. 114-6. NBC subsequently changed its name to CARV Industries Incorporated, and then to CARV.com, Inc., and then ultimately to Pacifictradingpost.com ("PTRD").[1] Lanham Defs.' Resp. Ex. F, Articles of Amendment to the Articles of Incorporation at KS000360; *Id.* at KS000366-67, Pacifictradingpost.com., Inc., Gen. Form for Registration of Sec. of Small Bus. Issues.

---

[1] The Court notes that there are other licenses regarding the '634 Patent and/or U.S. Re '571, but the Court is unclear as to their effectiveness and whether they have been terminated.

5

**II. Defendant Paul Lanham's Worldwide Exclusive Sub-License Agreement**

On April 26, 1999, PTRD entered into a Worldwide Exclusive Sub-License Agreement with Lanham regarding U.S. Re '571, where Lanham was provided with the rights to

> develop, manufacture, use, sell, market, have marketed, sublicense and distribute all Products based upon or derived from Patent '571 . . . , including all divisions, continuations, reissues, extensions thereof and the right to sublicense, for the Life of the Patent[]. The exclusive right and license granted shall apply to all inventions, improvements, patent applications, and letters of patent which PTRD now owns or controls and which directly or indirectly, relate to the Patent[] or any self-erecting structure.

Lanham Defs.' Resp. Ex. G, Worldwide Exclusive Sub-License Agreement at KS000174 ¶ 1, Apr. 26, 1999, ECF No. 114-8 [hereinafter Worldwide Exclusive Sub-License Agreement]. On the same day, Lanham acquired ownership of Springbok from PTRD. Lanham Defs.' Resp. Ex. H., Purchase Agreement at KS000187 ¶ 1, Apr. 26, 1999, ECF No. 114-9 [hereinafter Purchase Agreement].

Although Lanham testified during his April 7, 2010 deposition that he was not familiar with, and never signed, the Worldwide Exclusive Sub-License Agreement or Purchase Agreement, Pl.'s Mot. Ex. 2, Paul Lanham Dep. 86:19-88:12, Apr. 7, 2010, ECF No. 111-4 [hereinafter Paul Lanham Dep.], Lanham also testified that his son, Defendant Randall Lanham ("Randall"), a California attorney, had power of attorney to sign documents on his behalf, and had possibly

6

signed those agreements, *id.* at 89:2-91:13; Lanham Defs.' Resp. Ex. Z, Randall Lanham Decl. ¶¶ 4-5, May 20, 2010, ECF No. 114-27 [hereinafter Randall Lanham Decl.]; Randall Lanham Decl. Ex. A, Power of Att'y, June 5, 1995, ECF No. 114-27.[2] In addition, although Lanham testified that he was unable to recall whether he authorized the filing of the counterclaim regarding U.S. Re '571, Paul Lanham Dep. 99:10-13, Lanham also testified that he had difficulties remembering past events, *e.g., id.* at 14:8-15, and there is evidence that Lanham authorized claims on his individual behalf against Plaintiff for infringement of U.S. Re '571 when he engaged Kilpatrick Stockton, LLP in 2006 to pursue claims of infringement before the Defense Logistics Agency about Plaintiff's sales, Lanham Defs.' Resp. Ex. Y, Engagement Letter, Feb. 21, 2006, ECF No. 114-26.

### III. The Reissue Applications and Fees for U.S. Re '571

The '634 Patent was reissued as U.S. Re '571 following the filing and prosecution of three reissue applications: (1) the first reissue application filed on August 19, 1991, Pl.'s Mot. Ex. 3, U.S. Patent Reissue Appl., Aug. 19, 1991, ECF No. 111-5—111-7; (2) the

---

[2]Plaintiff objects to the Court's consideration of the power of attorney because the document was not timely disclosed to Plaintiff during phase one of discovery.  However, the Court finds that even without considering the actual document, genuine issues of material fact exist as to whether Lanham's son was authorized to sign documents on Lanham's behalf as Lanham's attorney.
    If Plaintiff seeks to depose Lanham solely on the issue of the power of attorney document, the Court will permit a limited deposition prior to the close of all discovery in this case.

second reissue application filed on March 29, 1993, Pl.'s Mot. Ex. 4, U.S. Patent Reissue Appl., Mar. 29, 1993, ECF No. 111-8—111-10; and (3) the third reissue application filed on February 3, 1995, Pl.'s Mot. Ex. 5, U.S. Patent Reissue Appl., Feb. 3, 1995, ECF No. 111-11—111-17.

On August 22, 2001, the 12th year maintenance fee was paid at the small entity rate, along with a surcharge. Pl.'s Mot. Ex. 15, Patent Bibliographic Data, May 5, 2008, ECF No. 111-27. Plaintiff contends that U.S. Re '571 expired because the online patent bibliographic data appeared to indicate that there was a refund in connection with the 12th year maintenance fee and surcharge on September 6, 2001. *Id.* However, the U.S. Patent and Trademark Office ("PTO") confirmed that there was no refund, and that all fees were properly paid. Lanham Defs.' Resp. Ex. S, Letter from PTO Deputy Gen. Counsel William Covey to Pl.'s Att'y at IGUANA01175, Apr. 24, 2008, ECF No. 114-20 ("We searched for records of 'payments and refunds associated with the 12-year maintenance fee,' to include our microfiche files, and found no records. This is true in part because, to the best of our knowledge, there was no refund related to the 12-year maintenance fee."); *see also id.* at IGUANA01176-78 (2001 internal emails between PTO employees discussing problems with bibliographic data for U.S. Re '571 and reporting errors in bibliographic data for fees paid in reissue patents).

8

Plaintiff also contends that Hasbro Toys, Inc. became a licensee under the '634 Patent in 1995—during the prosecution of the third reissue application—and, as a consequence, McLeese lost entitlement to small entity status. Plaintiff further contends that McLeese failed to notify the PTO, and thus, when it issued, U.S. Re '571 was "stillborn." Although there is evidence before the Court indicating that Springbok entered into a license with Hasbro, Inc. in 1995, Def. Paul Lanham's Supplemental Resps. 2; Pl.'s Mot. Ex. 11, Addendum to Exclusive License at LANHAM000192 ¶ 4, Jan. 5, 1995, ECF No. 111-23; Pl.'s Mot. Ex. 12, Non-Exclusive, Nontransferable License Agreement at LANHAM000175 ¶ 1, July 8, 1996, ECF No. 111-24, the actual agreement between Springbok and Hasbro, Inc. has not been filed with the Court, and the Court is unclear whether any such license ever existed.

## DISCUSSION

**I. Plaintiff's Motion for Summary Judgment**

Plaintiff contends that Lanham's counterclaim for patent infringement fails as a matter of law because (1) U.S. Re '571 is not enforceable, and (2) even if it is enforceable, Lanham lacks standing to bring a counterclaim for patent infringement. For the following reasons, the Court finds that genuine issues of material fact exist as to the enforceability and ownership of U.S. Re '571 by Lanham.

9

### A.  Enforceability

Plaintiff contends that U.S. Re '571 is unenforceable because (1) issue and maintenance fees due to the PTO were not paid in full, and thus, U.S. Re '571 was "stillborn" and/or "expired due to lack of payment;" and (2) McLeese "had assigned all of his right, title, and interest in the '634 Patent to Tents, Etc., Mac[c]o International, and Magic Dream[,] Inc. before the First Reissue Application had even been filed." Pl.'s Br. in Supp. of Mot. for Summ. J. 11 (internal citations omitted), ECF No. 111-2 [hereinafter Pl.'s Br.].  The Court will address each contention in turn.

> *1.  Unenforceability of U.S. Re '571 for Nonpayment of Fees*

Plaintiff contends that U.S. Re '571 is unenforceable because there was a refund in connection with the 12th year maintenance fee and surcharge.  However, the Lanham Defendants produced evidence from which a reasonable factfinder could conclude that all required fees were paid and that there was no refund related to the 12th year maintenance fee and surcharge.  Therefore, the Court finds that there are genuine issues of material fact as to whether all maintenance and surcharge fees were paid to the PTO.

Plaintiff also contends that U.S. Re '571 is unenforceable because it was "stillborn" on issue since small entity fees were paid when large entity fees were due.  Eligibility for small entity status is determined at the time a fee is due.  37 C.F.R. § 1.27(g)(1).  If

10

an applicant has licensed rights to any entity that would not qualify for small entity status, the applicant must pay large entity fees. However, if large entity status were applicable at the time a fee is due, a good faith underpayment in a small entity amount can be corrected upon submission of a deficiency payment. 37 C.F.R. § 1.28(c); *e.g., Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1149-50 (Fed. Cir. 2003); *DH Tech., Inc. v. Synergystex Int'l, Inc.*, 154 F.3d 1333, 1342-43 (Fed. Cir. 1998). An error in fee payment makes a patent unenforceable only where it is proven by clear and convincing evidence that the applicant or applicant's counsel deliberately defrauded the PTO by intentionally paying the small entity amount, knowing that a large entity amount was due. 37 C.F.R. § 1.27(h)(2) (providing that paying fees in a small entity amount "[i]mproperly, and with intent to deceive" is "fraud practiced or attempted on the Office"); *see Ulead Sys., Inc.*, 351 F.3d at 1146 (holding that the "traditional standard for inequitable conduct is applicable to PTO proceedings involving the payment of maintenance fees as a small entity" and that the "burden is on the party asserting inequitable conduct to establish it by clear and convincing evidence" (internal quotation marks omitted)).

Here, it is unclear whether there was any sublicense of patent rights that would have made large entity fees applicable when the U.S. Re '571 issue fees or maintenance fees were due. However, even

11

if large entity status were due, the Court finds that there are genuine issues of material fact as to whether McLeese or the prosecuting attorneys acted with actual intent to mislead the PTO, such that U.S. Re '571 would be deemed unenforceable. Therefore, the Court finds that there are genuine issues of material fact as to whether U.S. Re '571 was "stillborn."

### 2.   *McLeese's Right to Obtain Reissuance*

Next, Plaintiff contends that U.S. Re '571 is unenforceable because McLeese was not entitled to file a reissue application. Specifically, Plaintiff argues that McLeese could neither seek reissuance nor grant any license rights in the '634 Patent or U.S. Re '571 because he had assigned all of his rights to the McLeese Companies. However, McLeese was not only the inventor and patentee; he was also the president of the McLeese Companies, with full authority to act on their behalf. Furthermore, the license pursuant to which Springbok obtained the rights that were ultimately sublicensed to Lanham stated that McLeese and the McLeese Companies were licensors, and that McLeese signed the agreement on behalf of the McLeese Companies. Pl.'s Mot. Ex. 11, Exclusive License Agreement at LANHAM000183 ¶ 1. Therefore, the Court finds that there are genuine issues of material fact as to whether McLeese had the right to obtain reissuance of the '634 Patent and whether he had the right to grant licenses under U.S. Re '571.

12

B. <u>Standing</u>

In the alternative, Plaintiff argues that even if U.S. Re '571 were enforceable, Lanham nevertheless lacks standing to enforce U.S. Re '571 because (1) Lanham made statements during his April 2010 deposition that he did not sign the Worldwide Exclusive Sub-License Agreement, that he did not believe he personally had rights to U.S. Re '571, and that he did not recall authorizing the counterclaim for patent infringement of U.S. Re '571; (2) Lanham's exclusive sublicense was not recorded with the PTO; and (3) Lanham's exclusive sublicense was limited to "tents and shade structures," and did not cover Plaintiff's "bednets." Pl.'s Br. 9-12. The Court will address each contention in turn.

*1. Defendant Paul Lanham's Deposition Testimony*

First, Plaintiff contends that statements made by Lanham during his April 2010 deposition regarding his knowledge of agreements he entered into, the legal effect of those agreements, and whether he authorized the filing of the counterclaim for infringement of U.S. Re '571, establish as a matter of law that he lacks standing to sue for infringement of U.S. Re '571. The Court disagrees.

As an initial matter, the Court rejects Plaintiff's contention that Lanham's personal opinion as to the legality of any agreements he entered into is probative on the issue of the legal effect of those agreements. In addition, although Lanham was unable to recall

13

during his deposition that he authorized the filing of the counterclaim regarding U.S. Re '571, Lanham testified that he had difficulties remembering past events, and there is evidence in the record that Lanham authorized claims on his individual behalf against Plaintiff for infringement of U.S. Re '571 when he engaged Kilpatrick Stockton, LLP in 2006 to pursue claims of infringement before the Defense Logistic Agency about Plaintiff's sales.  Furthermore, Lanham testified in his deposition that while he did not sign the April 26, 1999 Purchase Agreement with PTRD, or the April 26, 1999 Worldwide Exclusive Sub-License Agreement with PTRD, Lanham's son, Randall, a California attorney, had power of attorney to sign documents on his behalf, and had likely signed those agreements.  Therefore, the Court finds that genuine issues of material fact exist as to whether Lanham has standing to pursue his counterclaim for patent infringement based upon his deposition testimony.

       *2.   The Recordation of the Exclusive Sublicense*

Next, Plaintiff contends that Lanham lacks standing to bring his counterclaim for patent infringement because he failed to record his exclusive sublicense.  Although assignments can be recorded, recordation is not a condition of the validity of an assignment and there is no provision for the recordation of licenses.  *See* 35 U.S.C. § 261 ("An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration,

14

without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage."). Although in some circumstances, an unrecorded prior "assignment, grant or conveyance" will not be effective against a later good faith purchaser or mortgagee, § 261 does not void an unrecorded conveyance as between the assignor and assignee. Furthermore, even if recordation were necessary, the Court finds that there are genuine issues of material fact as to whether the rights to U.S. Re '571 were purchased without notice of Lanham's sublicense rights, such that lack of recordation would be an issue.

       *3.   The Scope of the Exclusive Sublicense*

Lastly, Plaintiff contends that even if U.S. Re '571 were enforceable, and even if Lanham's exclusive sublicense were valid, Lanham cannot enforce his exclusive sublicense against Plaintiff because Plaintiff manufactures "bednets," and the scope of Lanham's exclusive sublicense only covers "self-erecting tent[s] or shade structure[s]." *See, e.g.*, Pl.'s Mot. Ex. 11, Exclusive License Agreement at LANHAM000184 ¶ 9 (defining "Product" as a "self-erecting tent or shade structure based upon or derived from Patent '634 . . . , including all divisions, continuations, reissues and extensions thereof").

The Worldwide Exclusive Sub-License Agreement provides in pertinent part,

15

> PTRD hereby grants unto Lanham the worldwide exclusive sub-license to develop, manufacture, use, sell, market, have marketed, sublicense and distribute all Products based upon or derived from Patent '571 . . . , including all divisions, continuations, reissues, extensions thereof and the right to sublicense, for the Life of the Patent[]. The exclusive right and license granted shall apply to all inventions, improvements, patent applications, and letters of patent which PTRD now owns or controls and which directly or indirectly, relate to the Patent[] or any self-erecting structure.

Worldwide Exclusive Sub-License Agreement 1 ¶ 1. A reasonable factfinder could conclude, based upon the language in the Worldwide Exclusive Sub-License Agreement, that Lanham's exclusive sublicense encompassed all structures covered by U.S. Re '571, regardless of whether the structure was called a "tent," a "shade structure," or a "bednet." Therefore, the Court finds that there are genuine issues of material fact as to whether Plaintiff's "bednets" fall under the scope of Lanham's exclusive sublicense.

Accordingly, the Court finds that there are genuine issues of material fact as to the enforceability and ownership of U.S. Re '571 by Lanham, and therefore, Plaintiff's motion for summary judgment is denied.

## II. Plaintiff's Motion for Sanctions

In addition to its summary judgment motion, Plaintiff moves the Court to impose sanctions against counsel for Defendants Paul Lanham, Charles Calkins, and Kilpatrick Stockton, LLP (represented by Susan Cahoon, Candice Decaire, and Kilpatrick Stockton, LLP), as well as

co-counsel for Defendants Charles Calkins and Kilpatrick Stockton, LLP (represented by William Tucker and Page, Scrantom, Sprouse, Tucker & Ford, PC) for allegedly improper conduct in connection with Lanham's patent infringement counterclaim.  Pl.'s Br. in Supp. of Pl.'s Mot. for Sanctions 2, ECF No. 119-2.  Specifically, Plaintiff contends that counsel had no valid factual or legal basis in filing Lanham's counterclaim and that counsel acted in bad faith in pursuing the counterclaim.  *See generally id.*

Plaintiff brings the motion pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's "inherent powers." Rule 11 provides in part,

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

17

Fed. R. Civ. P. 11(b)(1)-(4). A motion for sanctions under Rule 11 entails a two-step inquiry: "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001) (internal quotation marks omitted).

The second source of authority for sanctions, 28 U.S.C. § 1927, provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Under § 1927, the "sanctioning mechanism is aimed at the unreasonable and vexatious multiplication of proceedings." *Byrne*, 261 F.3d at 1106. Section 1927 requires a showing of bad faith, which is warranted "where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003).

Finally, the third source of authority for sanctions is the Court's inherent powers. "One aspect of a court's inherent power is the ability to assess attorneys' fees and costs against the client or his attorney, or both, when either has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Byrne*, 261 F.3d

18

at 1106 (internal quotation marks omitted). "[T]he key to unlocking a court's inherent power is a finding of bad faith." *Id.* (internal quotation marks omitted).

Here, there is nothing in the record to support Plaintiff's contention that counsel's actions in connection with Lanham's counterclaim were objectively unreasonable. Notably, genuine issues of material fact exist as to the issues of ownership and enforceability of U.S. Re '571. Furthermore, there is nothing in the record to support Plaintiff's contention that counsel for the Lanham Defendants acted in bad faith in pursuing the counterclaim. Therefore, for the same reasons the Court denies Plaintiff's summary judgment motion, and for the additional reason that counsel for the Lanham Defendants has not acted in bad faith in pursuing Lanham's counterclaim for patent infringement, the Court denies Plaintiff's sanctions motion.

## CONCLUSION

As discussed above, the Court finds that there are genuine issues of material fact as to the enforceability and ownership of U.S. Re '571. Accordingly, Plaintiff's Motion for Summary Judgment as to Ownership and Enforceability of U.S. Re 35,571 by Paul E. Lanham (ECF No. 111) is denied. Additionally, the Court denies Plaintiff's Motion for Sanctions (ECF No. 119).

19

IT IS SO ORDERED, this 23rd day of August, 2010.

                                                S/Clay D. Land
                                                        CLAY D. LAND
                                          UNITED STATES DISTRICT JUDGE

IT IS SO ORDERED, this 23rd day of August, 2010.