IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

IGUANA, LLC,                          *

        Plaintiff,                    *

vs.                                   *        CASE NO. 7:08-CV-9 (CDL)

PAUL E. LANHAM, *et al.*,              *

        Defendants.                   *

_____

O R D E R

Presently pending before the Court are two motions for sanctions filed by Plaintiff Iguana LLC ("Iguana") and one motion to compel filed by Defendants Paul E. Lanham, Charles Calkins, and Kilpatrick Stockton LLP (collectively, the "Kilpatrick Defendants"). As discussed below, Iguana's motion for sanctions related to the deposition of Randall Lanham (ECF No. 153) is denied. Iguana's motion for sanctions related to the belated disclosure of certain evidence by Defendants Federal Marketing Service Corporation ("FMSC"), Montgomery Marketing, Inc. ("MMI") and H. David Cobb (collectively, the "MMI Defendants") (ECF No. 158) is granted to the extent set forth below. The Kilpatrick Defendants' Motion to Compel (ECF No. 156) is granted to the extent set forth below.

I.  **Iguana's Motion for Sanctions as to Randall Lanham Deposition**

Iguana's first motion for sanctions relates to two depositions of Defendant Randall Lanham ("Randall"), which were scheduled for July of this year but did not occur. Iguana contends that Randall, along with the Kilpatrick Defendants and the MMI Defendants, committed sanctionable conduct by intentionally "scuttling" Randall's depositions. As discussed below, the Court disagrees.

A.  Factual Background

Iguana wished to depose Randall. The Kilpatrick Defendants also wished to depose Randall. The Kilpatrick Defendants issued a subpoena for Randall to testify at a deposition in California, and Randall accepted service of the subpoena. Pl.'s Mot. for Discovery Sanctions [hereinafter Sanctions Mot. #1] Ex. 1, Email from C. Decaire to L. Hatcher, et al., June 15, 2011, ECF No. 153-2; Sanctions Mot. #1 Ex. 2, Subpoena, ECF No. 153-3. The subpoena listed July 15, 2011 as the date for the deposition, though the subpoena was accompanied by a communication stating that if July 15 was inconvenient for Mr. Lanham, counsel would work to find another date. *Id.*; Sanctions Mot. #1 Ex. 8, Email from S. Cohoon to S. Asman, et al., July 8, 2011 at 7:17 PM, ECF No. 153-9 at 1. Counsel for the Kilpatrick Defendants notified Iguana's counsel and counsel for the MMI Defendants that she

expected to hear from Randall soon about whether that date was feasible for Randall. Sanctions Mot. #1 Ex. 1, Email from C. Decaire to L. Hatcher, et al., June 15, 2011, ECF No. 153-2. On June 21, 2011, counsel for the Kilpatrick Defendants notified Iguana's counsel that she was "trying to confirm that July 15 is feasible" for Randall's deposition. Kilpatrick Defs.' Resp. to Sanctions Mot. #1 Ex. B, Email from C. Decaire to S. Asman, June 21, 2011, ECF No. 155-2.

Iguana did not wish to be limited to the scope of deposition topics in the Kilpatrick Defendants' subpoena. Therefore, on June 30, 2011, Iguana served Randall with a notice of deposition for July 14, 2011.[1] Iguana's counsel did not contact Randall regarding his availability prior to noticing the deposition. On July 5, 2011, counsel for the Kilpatrick Defendants asked Iguana's counsel if the two depositions could be consolidated into one day. Sanctions Mot. #1 Ex. 5, Email from C. Decaire to S. Asman, July 5, 2011, ECF No. 153-6. Iguana's counsel construed this email as "confirmation" of the July 14 and 15 deposition dates, even though counsel for the Kilpatrick Defendants reminded Iguana's counsel that she had reached out to Randall to verify that he would be available on July 15 and to "determine what California location will be

---

[1] Iguana apparently mailed the notice on July 30 or July 1, so that it was received by Randall on Tuesday, July 5. Iguana also sent Randall a courtesy copy of the notice by email on July 30 or July 1.

best." *Id.*   Counsel for the Kilpatrick Defendants did not tell Iguana's counsel that she had confirmed the date and location of the deposition.   Both Iguana's counsel and counsel for the Kilpatrick Defendants purchased nonrefundable plane tickets from Georgia to California in anticipation of Randall's deposition.

On July 8, 2011, Randall told Iguana's counsel via telephone that he could not attend the depositions on July 14 and 15 because he had prior commitments.   Iguana's counsel emailed counsel for the Kilpatrick Defendants and the MMI Defendants to let them know that Randall asked that his depositions be postponed due to conflicts in Randall's schedule. Sanctions Mot. #1 Ex. 8, Email from S. Asman to C. Decaire, et al., July 8, 2011 at 6:51 PM, ECF No. 153-9 at 1.   Iguana's counsel noted that he had explained to Randall that Iguana was "unable to change the existing schedule" due to the scheduling order, upcoming depositions and travel arrangements.   *Id.* Iguana's counsel also notified counsel for the Kilpatrick Defendants and MMI Defendants that he would object to any changes to the deposition date unless the Court extended the discovery deadline, which was August 12, 2011.   *Id.*

The Kilpatrick Defendants' counsel responded to the email from Iguana's counsel and notified him that she had also been informed by Randall for the first time that day that he was not available on July 14 or 15.   Sanctions Mot. #1 Ex. 8, Email from

S. Cohoon to S. Asman, et al., July 8, 2011 at 7:17 PM, ECF No. 153-9 at 1-2. Counsel for the Kilpatrick Defendants informed Iguana's counsel that Randall said he was available during the week of July 25, and she suggested that Iguana's counsel "pick a weekday" during that week for his deposition, then the Kilpatrick Defendants would schedule their deposition for the following day. *Id.* at 2. The Kilpatrick Defendants' counsel noted that discovery did not close until August 12, that there was sufficient time for a new deposition notice and a new subpoena to be issued, and that it "seems less of a hassle to everyone concerned if we just get new dates agreed upon and serve revised notices/issue a new subpoena consistent with those dates." *Id.* Iguana's counsel responded that he had already made travel plans based on the Kilpatrick Defendants' subpoena, that he did not realize the July 14 and 15 dates were flexible, and that he suggested they "leave the matter in Randall's hands." Sanctions Mot. #1 Ex. 8, Email from S. Asman to S. Cohoon, et al., July 8, 2011 at 7:55 PM, ECF No. 153-9 at 3. Later the same evening, Iguana's counsel stated that "Iguana's plans are fixed, and absent an Order and Extension [from the Court], Iguana will object to any changes" to Randall's deposition dates. Sanctions Mot. #1 Ex. 8, Email from S. Asman to S. Cohoon, et al., July 8, 2011 at 10:04 PM, ECF No. 153-9 at 4.

On July 13, 2011, Iguana's counsel traveled to California for Randall's deposition.[2]  Neither counsel for the Kilpatrick Defendants nor counsel for the MMI Defendants traveled to California for the deposition.  Randall did not appear for the deposition.  None of the parties filed a motion with the Court regarding this issue until Iguana filed its motion for sanctions.  Although Randall was available for a deposition on July 27, Iguana refused to agree to a deposition of Randall before the Court ruled on its motion for sanctions.

    B.   Discussion

Iguana contends that the Defendants intentionally "scuttled" Randall's deposition.  Iguana appears to argue that Randall should be sanctioned under Federal Rules of Civil Procedure 30(g) and 37(d) for failing to attend his deposition and that the Kilpatrick Defendants and MMI Defendants should also be sanctioned because they were complicit in Randall's failure to attend the deposition.

    As a sanction, Iguana requests that Defendants be ordered to pay all of Iguana's costs and expenses for the California

---

[2] On July 13, 2011, Randall's counsel notified Iguana's counsel that Randall would not be present for the deposition on July 14. Kilpatrick Defs.' Resp. to Sanctions Mot. #1 Ex. B, Email from C. Decaire to S. Asman, June 21, 2011, ECF No. 155-2.  He also notified Iguana's counsel that Randall objected to the deposition notice as deficient in several respects, and notified Iguana's counsel that Randall would be available for the deposition on July 27.  Iguana's counsel apparently did not receive the letter until after he was in transit.

travel.  Iguana also requests an order excluding any documents attributed to Randall (except "admissions") and preventing Randall from testifying in this action.  Finally, Iguana contends that the Court should enter a default judgment against the Kilpatrick Defendants.

The Court declines to impose sanctions.  This simple scheduling dispute could have been easily resolved had counsel for Iguana simply rescheduled the deposition to a mutually convenient time.  Iguana's counsel has no one but himself to blame for his decision to travel to California.  He ignored the clear indications that the Randall deposition would not take place on July 14 or 15, and he refused to consider reasonable alternative dates for the deposition.

From the very beginning, it was no secret that the July 15 deposition date was not set in stone as Iguana insists it was. On June 15 and again on June 21 and July 5, counsel for the Kilpatrick Defendants told Iguana's counsel that she was trying to confirm the deposition for July 15 but had not been able to do so.  It is unclear why Iguana's counsel would take these statements as confirmation of the deposition date.  Moreover, Iguana's counsel did not check Randall's availability before he noticed Iguana's deposition of Randall, and he never confirmed either deposition date with Randall.  Randall himself contacted Iguana's counsel a couple days after receiving the deposition

notice to explain his schedule conflicts and tell Iguana's counsel that he could not attend the depositions on July 14 and 15. It is difficult to understand how Iguana's counsel interpreted all of this to suggest that Randall would appear for a deposition on July 14 or July 15, given that everything Iguana's counsel was told pointed to the contrary.

After it should have been clear to Iguana's counsel that the depositions would not take place on July 14 or 15, Iguana's counsel refused to work with Randall to find a mutually agreeable deposition date. And while everyone else tried to find a date that did not pose a conflict for Randall, Iguana's counsel refused to budge. Iguana's counsel inexplicably blamed the Court's scheduling order for his resistance to a different date, even though there was more than a month left in the discovery period and two weeks left to issue a deposition notice. This approach to a simple scheduling conflict by Iguana's counsel distracts from the serious issues presented in this case and conflicts with the Court's expectations as to how discovery should be conducted. The Court finds that Defendants' conduct regarding the scheduling of the Randall deposition does not authorize the imposition of any sanction. At most, they failed to recognize that there was a communication gap between what they were telling Iguana's counsel and what Iguana's counsel heard.

Should Defendants still wish to depose Randall to preserve his testimony for trial, they shall be permitted to do so, at a time that is agreeable to Randall and all the parties.[3]

## II. Iguana's Motion for Sanctions as to Belated Disclosure of Certain Evidence by MMI Defendants

Unlike Iguana's first motion for sanctions, Iguana's second motion for sanctions raises serious and troubling issues. Iguana seeks the ultimate sanction, entry of default judgment against the MMI Defendants, for the MMI Defendants' belated disclosure of certain evidence and lack of candor in their response to a direct order from the Court. As discussed below, the Court finds that sanctions are warranted.

### A. Factual Background

In its Complaint, Iguana claims that the Kilpatrick Defendants published a letter that wrongfully accused Iguana of willfully infringing U.S. Reissue Patent No. 35,571. Iguana contends that the MMI Defendants forwarded a copy of that letter to Patriot Performance Materials, Inc., one of Iguana's major suppliers.

Until quite recently, the MMI Defendants steadfastly denied that they had sent the letter to Patriot. Shortly after this action was filed in 2008, the Court ordered Defendants,

---

[3] The Court recognizes that several summary judgment motions have been filed in this case. The Court has not yet decided those motions, and the Court's decision to permit Randall's deposition should not be construed as an indication one way or the other as to the Court's position on the merits of those motions.

including the MMI Defendants, to disclose to Iguana the names and addresses of all the parties who received the infringement letter. TRO Hr'g Tr. 78:21-79:5, Jan. 31, 2008, ECF No. 18; Order Den. Mot. for TRO, Feb. 1, 2008, ECF No. 10. Defendant Cobb, the president and CEO of MMI and FMSC, provided the Court with an affidavit stating that he sent the letter to Peter Pfaff of Glasforms, Inc. Cobb Aff. ¶ 3, ECF No. 13. Cobb stated in his affidavit that he did not send the letter "to any other person or entity" and that neither MMI nor FMSC had sent the letter to any other person or entity. *Id.* ¶ 4. This statement was untrue. The MMI Defendants continued to deny that they had sent the infringement letter to Patriot. *E.g.*, MMI Defs.' Am. Answer ¶ 101, ECF No. 128; 2d Am. Compl. ¶ 101, ECF No. 60.

On May 23, 2011, Iguana served written discovery requests on the MMI Defendants. In June of 2011, counsel for the MMI Defendants discovered, based on his examination of the MMI Defendants' computer systems, that the MMI Defendants actually had sent the infringement letter to Patriot. Counsel for the MMI Defendants disclosed this information to Iguana on June 15, 2011. The Court ordered the MMI Defendants to produce by June 27, 2011 the emails and computer files that revealed the MMI Defendants' conduct in sending the infringement letter to Patriot. Additionally, Cobb admitted during his deposition that he had made false representations regarding his involvement in

10

sending the infringement letter and that he did so with the intent to deceive Iguana, the Court and his counsel.

Due to the MMI Defendants' intentional misrepresentation, Iguana contends that it incurred needless expenditures to prove that the MMI Defendants actually did send the infringement letter to Patriot. The MMI Defendants admit that Cobb lied to Iguana and to the Court. They contend, however, that the misrepresentation had little impact on the case and that the litigation has not been expanded or meaningfully delayed due to the misrepresentation, particularly given that Iguana did not serve any written discovery requests on the MMI Defendants until May 23, 2011.

As a sanction for the MMI Defendants' behavior, Iguana asks that the Court strike the answer and defenses of the MMI Defendants and enter a default judgment against them. Iguana further asks that the MMI Defendants be required to pay Iguana's costs associated with proving that the MMI Defendants sent the infringement letter to Patriot, including the costs arising out of Iguana's lawsuit against Patriot. Iguana argues that many of the costs incurred in this litigation and "likely the entirety of the Patriot litigation" could have been avoided if the MMI Defendants had not made the misrepresentation to Iguana and the Court. Pl.'s 2d Mot. for Sanctions 10, ECF No. 158.

B.   Discussion

The MMI Defendants do not dispute that they failed to comply with the Court's orders of January 31, 2008 and February 1, 2008 that required the MMI Defendants to disclose to Iguana the names and addresses of all the parties who received the infringement letter.  They do not dispute that Cobb lied in his affidavit.   They do not dispute that the MMI Defendants maintained this lie for three years—until June of this year. The MMI Defendants concede that some sanction is appropriate, but they argue that the ultimate sanction of striking their answer and defenses is not warranted.

Under Federal Rule of Civil Procedure 37(b)(2)(A), the Court may sanction a party for failing to comply with the Court's discovery orders.  Such sanctions may include striking the disobedient party's pleadings and rendering a default judgment against the disobedient party.   Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi).  The sanctions may also include ordering the disobedient party to pay the reasonable expenses caused by its failure to comply with the discovery order.  Fed. R. Civ. P. 37(b)(2)(C).   A default judgment against a defendant, like a dismissal with prejudice against a plaintiff, is a severe sanction that may be appropriate when the disobedient party has acted in bad faith and demonstrated a flagrant disregard for the court and the discovery process.   *E.g., Shortz v. City of*

*Tuskegee, Ala.,* 352 F. App'x 355, 359 (11th Cir. 2009) (per curiam).  A default judgment against a defendant is a drastic sanction, and it should generally only be implemented "as a last resort, when: (1) a party's failure to comply with a court order is a result of willfulness or bad faith; and (2) the district court finds that lesser sanctions would not suffice."  *Id.* (discussing sanction of dismissing plaintiff's complaint with prejudice) (citing *Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1542 (11th Cir. 1993)).  In *Shortz*, for example, the Eleventh Circuit affirmed the district court's dismissal with prejudice of a plaintiff's complaint because the plaintiff purposefully disregarded court orders for him to respond to the defendant's written discovery requests and appear at a deposition.  *Id.* at 358-59.

    The MMI Defendants' conduct here extends beyond failing to respond to a court order.  In addition to their failure to comply with the Court's order, they affirmatively lied that they had provided complete information in response to the Court's order, and they did so for the express purpose of misleading the parties and the Court.  It is no wonder that the MMI Defendants do not now seriously dispute that they willfully and in bad faith failed to comply with the Court's 2008 orders to disclose to Iguana the names and addresses of all the parties who received the infringement letter.  Their conduct displayed a

13

lack of respect for the Court and the entire litigation process, which depend on the parties to comply with Court orders and demonstrate candor in response to directives from the Court. The MMI Defendants were not mistaken about the Court's order. Their response to it was not equivocal or ambiguous; nor was it attributable to a lack of recollection.   In colloquial terms, they "flat out lied."   The Court can think of few types of conduct that would be more egregious and harmful to the judicial process than knowingly lying in response to a Court order.   Such conduct cannot be condoned.   Merely slapping the MMI Defendants on the wrist with an imposition of attorney's fees would diminish the seriousness of the misconduct.

The response of the MMI Defendants' attorneys, upon learning that their clients lied, is commendable, but the Court would expect no less from members of the Bar.   The fact that the attorneys acted admirably does not excuse what their client did. Moreover, any attempt at this time to diminish the seriousness of the conduct rings hollow.   The publication of the letter is at the heart of this litigation.   The Court found it sufficiently significant that it ordered the MMI Defendants to disclose the information early in the litigation.   The failure to disclose the information undoubtedly altered the discovery process and likely has expanded this litigation.   A price must

be paid, and it must exceed the mere out of pocket cost created by the misconduct.

This case cries out for the ultimate sanction. The president of MMI and FMSC thought he was above the law. He could lie when it suited his financial interests to do so. He felt no duty of honesty to the Court or even to his own attorneys. His conduct demonstrates a complete lack of respect for the Court and the judicial system which it represents. He must be called to account. The minimum sanction necessary to redress this flagrant and dishonest disregard for the Court's order is the ultimate sanction. Accordingly, the answers of the MMI Defendants are stricken, and they are placed in default as to liability. They shall be permitted to contest the amount of damages for which they should be held liable.

### III. Kilpatrick Defendants' Motion to Compel

The Kilpatrick Defendants brought their motion to compel because they contend that Iguana has not adequately responded to their document requests. The Court previously warned the parties that discovery abuses would not be tolerated. Accordingly, Iguana shall not be permitted to offer any documents that it did not produce before discovery closed on August 12, 2011. The Kilpatrick Defendants focus on four categories of documents: (a) documents related to separate litigation involving Iguana and its supplier, Patriot

Performance Materials, Inc. ("Patriot"); (b) documents produced for the first time at the 30(b)(6) deposition of Iguana representative Ernie Stewart; (c) Iguana's financial documents; and (d) documents related to the expert report of Patrick Malyszek.  The Court addresses each issue below.

A.  Patriot Litigation Documents

Iguana argues that Defendants' actions caused Iguana's supplier, Patriot, to stop working on the production of Iguana's products, thus harming Iguana.  Iguana pursued a separate breach of contract action against Patriot.  The Kilpatrick Defendants requested "all non-privileged documents related to the Patriot Litigation . . . including but not limited to all pleadings, correspondence, discovery, document[] productions, deposition transcripts, deposition exhibits, and emails related to the case."  Kilpatrick Defs.' Reply in Supp. of Mot. to Compel Ex. A, Pl.'s Resps. to Kilpatrick Defs.' Doc. Reqs. ¶ 25, ECF No. 168-1 at 7-8.

Iguana apparently does not dispute that the documents sought are discoverable and should be produced.  Rather, Iguana contends that it has already produced the documents via a web-based program called CaseWebs.  Iguana's counsel represented that "to the extent [Iguana's counsel] has any documents from the Patriot cases, they are . . . available on CaseWebs."  Pl.'s Resp. to Kilpatrick Defs.' 2d Mot. to Compel 4, ECF No. 165.

The Kilpatrick Defendants acknowledge that some of the Patriot litigation documents are available on CaseWebs. According to the Kilpatrick Defendants, CaseWebs does not contain the full depositions and exhibits for all depositions conducted in the Patriot litigation, including the depositions of Mr. Stewart, Ms. Redfern and Mr. Powell. CaseWebs also does not contain all of the written discovery requests and responses for the Patriot litigation, nor does it contain correspondence related to the Patriot litigation. The Court recognizes that Iguana's counsel has represented that he produced all of the documents he received from his client, but the relevant inquiry is not whether Iguana's *counsel* has the documents but whether *Iguana* has possession, custody or control of the documents.

Within seven days of the date of this Order, Iguana shall produce all Patriot litigation documents that have not previously been produced, including the full depositions and exhibits for all depositions conducted in the Patriot litigation, all of the written discovery requests and responses for the Patriot litigation, and non-privileged correspondence related to the Patriot litigation. Iguana shall also produce a privilege log of any documents that are responsive to the Kilpatrick Defendants' request but which Iguana contends are privileged.

B.   Documents Produced at 30(b)(6) Deposition

The Kilpatrick Defendants asked Iguana to produce all documents in support of Iguana's claim that the Kilpatrick Defendants caused Iguana to lose a government contract, as well as all documents that relate to Iguana's claim of damages. Kilpatrick Defs.' Reply in Supp. of Mot. to Compel Ex. A, Pl.'s Resps. to Kilpatrick Defs.' Doc. Reqs. ¶¶ 18, 46, ECF No. 168-1 at 6, 12.   During the 30(b)(6) deposition of Iguana's representative, Earnest Stewart, Stewart testified that Iguana is seeking damages in connection with a contract concerning individual combat shelters.  According to Kilpatrick, Iguana had not previously identified the individual combat shelter contract as one it lost due to Defendants' conduct, and it had not produced any documents regarding that contract.  Iguana does not appear to contest that such documents are discoverable.

Stewart did bring to his deposition on July 6, 2011 a DVD containing 81 files (nearly 10,000 pages) that had not previously been produced to Defendants, and he promised at his deposition to produce additional documents related to the government contracts.  According to Iguana, the documents were not "previously available" because they were on old computers that had been retired and were in storage.  According to the Kilpatrick Defendants, Iguana refused to agree to allow Defendants to reconvene Stewart's deposition so they could

question him on the documents that were produced at his deposition.

Defendants served their written discovery requests on Iguana in February 2011.  Iguana initially responded to those requests in April 2011.  After Defendants filed a previous motion to compel, the parties agreed to a production deadline of June 24, 2011.  Then, on July 6, 2011, Iguana's witness brought responsive documents to his deposition.  Iguana refused to permit Defendants to reconvene Stewart's deposition after they had an opportunity to review the documents.  Iguana made a supplemental production on August 19, 2011—after the close of fact discovery.  Iguana's only excuse for not producing the documents sooner is that they were stored in old computers that were in storage.  Iguana offers no explanation for its refusal to permit Defendants to reconvene the 30(b)(6) deposition.

Under these circumstances, the Court concludes that Iguana should not be permitted to rely upon at trial or in opposition to any motion any of the documents it first produced at Stewart's July 6 deposition, including documents related to the individual combat shelter contract.  Also, Iguana shall not be permitted to rely upon any of the documents it first produced after the close of discovery.  Defendants may rely on these documents if they choose to do so.

### C.   Financial Documents

The Kilpatrick Defendants asked Iguana to produce all documents that relate to Iguana's claim of damages and all of Iguana's financial statements.  Kilpatrick Defs.' Reply in Supp. of Mot. to Compel Ex. A, Pl.'s Resps. to Kilpatrick Defs.' Doc. Reqs. ¶¶ 46-47, ECF No. 168-1 at 12.  In response, Iguana stated that it had already produced all of the documents relating to its claim of damages and that the financial statements were not relevant.  *Id.*  Iguana did ultimately produce, after the close of fact discovery, profit and loss statements for 2007-2010 but did not produce profit and loss statements for 2004-2006.  The Kilpatrick Defendants contend that such documents are relevant because Iguana began producing bednets in 2004.  As discussed above, Iguana shall not be permitted to rely upon any of the documents it first produced at Stewart's July 6 deposition, and it shall not be permitted to rely on any documents that it produced after the close of discovery.

### D.   Expert Report of Patrick Malyszek

The Kilpatrick Defendants contend that the expert report of Iguana's expert, Patrick Malyszek, does not comply with Federal Rule of Civil Procedure 26(a)(2)(B)(ii).  The Kilpatrick Defendants did not raise this issue in their motion to compel; they raised it for the first time in their reply brief.  Accordingly, the issue is not properly before the Court.  If the

Kilpatrick Defendants raise this issue in a motion to exclude Malyszek's testimony, then the Court will consider the issue when it considers that motion.

E.   Effect of the Court's Ruling on Pending Motions

Within seven days of the date of this Order, the Kilpatrick Defendants shall file with the Court a short brief explaining how the Court's rulings in this Order affect the pending motions for summary judgment and motions to exclude testimony. The brief, which shall not exceed ten pages, should include a list of exhibits that were not timely produced but which Iguana relied on in its briefs and fact statements. The list should include the exhibit number, a brief description of the exhibit, the docket number of the exhibit, and the page number and/or paragraph number where the exhibit is cited. Should Iguana wish to file a response, it may do so within fourteen days of the date of this Order, and its brief shall not exceed ten pages.

CONCLUSION

For the reasons set forth above, Iguana's motion for sanctions related to the deposition of Randall Lanham (ECF No. 153) is denied. Iguana's motion for sanctions related to the belated disclosure of certain evidence by the MMI Defendants (ECF No. 158) is granted, and the MMI Defendants are placed in default as to liability. The Kilpatrick Defendants' Motion to Compel (ECF No. 156) is granted to the extent set forth above.

IT IS SO ORDERED, this 28th day of October, 2011.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE